UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD DONALD COX, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 5874 |
| | ) | |
| v. | ) | Honorable Judge |
| | ) | Virginia M. Kendall |
| THOMAS J. DART, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF LAW REGARDING LIVING CONDITIONS CASES

NOW COMES Defendant, Sheriff Thomas Dart, by his attorney, ANITA ALVAREZ, State's Attorney of Cook County, and through her Assistant, Anthony E. Zecchin, and submit this Memorandum of Law regarding the cases alleging unconstitutional living conditions in Cook County Jail (CCJ) in Division 3 and Division 3 Annex.

## I.     Conditions of Confinement[1]

A jail official violates the Eighth Amendment if the official is "deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities,' including adequate sanitation and personal hygiene items." *Budd v. Motley,* 711 F.3d 840 (7th Cir. 2013) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, (1994)); *see Rice v. Corr. Med. Servs.,* 675 F.3d 650, 664 (7th Cir. 2012); *Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006)). Because the plaintiffs were pretrial detainees at the time they filed suit, their claims are governed under the

---

1 Defendant addresses the most commonly made complaints in the Division 3/Division 3 Annex cases: cold temperatures, the presence of mold, rodents/insects, plumbing-related issues and a lack of access to cleaning supplies. To the extent this Court believes other claims are also pled with the same degree of frequency, Defendant will seek leave of court to file a supplemental brief addressing such claims. To the extent that less frequent or uncommon claims are made, Defendant respectfully requests that he be permitted to address those claims in the summary judgment motions brought in the respective individual lawsuits.

1

due process clause of the Fourteenth Amendment. *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). This is a distinction without difference, however, as the analysis is the same under both the Eighth and Fourteenth Amendment. *Smith v. Dart*, 803 F.3d 304, 310 (7th Cir. 2015).

Analysis of conditions of confinement claims requires a two-part inquiry: (1) objectively, is the injury is sufficiently serious to deprive the prisoner of the minimal civilized measures of life's necessities; and (2) subjectively, was the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *See Farmer*, 511 U.S. at 834; *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference ... means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*

A plaintiff's conditions of confinement must result in "extreme deprivations" in order to meet the first prong of the inquiry. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of [ ] violation.'" *Id.* at 9 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see Wilson v. Seiter*, 501 U.S. 294, 298, (1991). A prisoner is not entitled to "the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.3d 1232, 1235 (7th Cir. 1988). When reviewing a conditions of confinement claim, a court is to consider the totality of the conditions to determine if the Constitution has been violated. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989); *Geder v. Godinez*, 875 F. Supp. 1334, 1341 (N.D. Ill. Jan. 28, 1995) (Bucklo, J.) (defective pipes, sinks and toilets, improperly cleaned showers, stained mattresses, accumulated dust and dirt and infestation by roaches and rats did not rise to level of an Eighth Amendment violation, alone or in combination); *Wilson v. Schomig*, 863 F.

Supp. 789, 794-95 (N.D. Ill Sept. 30, 1994) (Aspen, J.) (cell containing dirt, dust, roaches, a leaking roof during rainstorms, and a urine-stained mattress did not violate the Eighth Amendment).

In order to prove the second prong of the inquiry, a plaintiff must show that the defendant was deliberately indifferent. Deliberate indifference is something approaching total unconcern for a plaintiff's welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm. *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir. 1992) (citing *McGill v. Duckworth,* 944 F.2d 344, 347 (7th Cir. 1991)); *Solivan v. Dart*, 897 F. Supp. 2d 694, 704 (N.D. Ill. June 14, 2012) (Kendall, J.). A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1986), *cert. denied*, 479 U.S. 816 (1986) (abrogated on other grounds). Put another way, a plaintiff must show that the official "realizes that a substantial risk of serious harm to a prisoner exists, but disregards it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015); *Kelley v. Hardy*, 2016 U.S. Dist. LEXIS 91245, at * 20 (N.D. Ill. July 14, 2016) (St. Eve, J.).

In the instant cases, and as discussed below, the steps at CCJ with regard to conditions of confinement, as reflected by the Monitor's findings and memorialized in the Monitor's reports issued for the relevant time period, demonstrate that Sheriff Dart's alleged actions do not rise to the level of deliberate indifference. *Hudson v. Preckwinkle*, 2015 U.S. Dist. LEXIS 41981, at ** 73-74 (N.D. Ill. Mar. 31, 2015) (Kendall, J.) (finding that "[t]he affirmative steps that Defendants have taken since the entry of the Federal Agreed Order cannot in any sense be characterized as deliberate indifference"); *see Frake v. City of Chicago*, 210 F.3d 779, 782 (7th Cir. 2000) (the "existence or possibility of other better policies, which might have been used

3

does not necessarily mean that the [Sheriff] was being deliberately indifferent."); *cf. Montano v. City of Chicago*, 535 F.2d 558, 571 (7th Cir. 2008) (internal report that discusses problems with the police department's investigations of excessive force does not show deliberate indifference, but an attempt to identify or fix the problem). Moreover, documentary evidence of work orders, rodent and insect spraying and other steps taken to resolve detainee complaints will demonstrate that Defendant was not deliberately indifferent.

Another issue that applies to the significant majority of these cases is the lack of evidence that the respective Plaintiff suffered any physical injury as a result of the alleged condition(s). Under the PLRA, a prisoner or pretrial detainee may not recover damages for mental or emotional suffering under section 1983 without a prior showing of physical injury. 42 U.S.C. § 1997e(e); *see Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("We believe that . . . § 1997e(e) forecloses an action for nominal or punitive damages for an Eighth Amendment claim involving no physical injury"); *Zehner v. Trigg*, 133 F.3d 459, 462-63 (7th Cir. 1997); *Gurley v. Sheahan,* 2009 U.S. Dist. LEXIS 62995, at ** 15-17 (N.D. Ill. July 21, 2009) (Pallmeyer, J.) (citing 42 U.S.C. § 1997e(e)) (failure to suffer a physical injury prevents recovery under section 1983); *Pritchett v. Page*, 2000 U.S. Dist. LEXIS 11559, at * 19 (N.D. Ill. Aug. 9, 2000) (Nordberg, J.). Even circumstances that appear to constitute a constitutional violation are insufficient if the plaintiff fails to prove a physical harm. *See Harris,* 839 F.2d at 1235 (being deprived of toilet paper for five days; not provided with soap, toothpaste, or a toothbrush for 10 days; and kept in a filthy, roach-infested cell for 28 days does not violate the constitution, where the conditions were temporary and affected only one prisoner, and the affected inmate suffered no physical harm).

Summary judgment is also appropriate where the plaintiff has failed to put forth sufficient evidence of causation between any alleged harm and the condition. *See, e.g., Walker v. Dart*, 2010 U.S. Dist. LEXIS 85230, at * 16 (N.D. Ill. Aug. 19, 2010) (Holderman, J) (citing *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); In *Walker*, the district court granted summary judgment on myriad claims related to jail conditions where the plaintiff offered no evidence to establish physical harm or link the complained of condition to the any injury. "Conclusory allegations, without backing from medical or scientific sources, that the rank air exposed [the plaintiff] to diseases and caused respiratory problems which he would not otherwise have suffered' are insufficient to survive summary judgment." The plaintiff offered only his subjective belief that a jail condition caused him to suffer physical harm the district court rejected this contention and concluded that, "[o]pinions or inferences based on medical, scientific, technical, or other specialized knowledge within the scope of Fed. R. Evid. 702 are not admissible as lay testimony," *Walker*, 2010 U.S. Dist. LEXIS 85230, at ** 15-16 (citing *United States v. York*, 572 F.3d 415, 420 (7th Cir. 2009)), and thus cannot establish causation. Therefore, the failure to produce competent, proper evidence to link an alleged harm to a specific condition is fatal to a plaintiff's effort to defeat summary judgment.

A.    *Allegations of cold temperatures*

In considering claims of cold temperatures, courts are to consider several factors, including the severity of the cold, its duration, whether the prisoner has alternative means to protect himself from the cold, the adequacy of those alternatives, and whether the prisoner must endure other uncomfortable conditions as well as the cold; no single factor, or even a combination of factors, is determinative of whether there is a constitutional violation. *Dixon*, 114 F.3d at 644. Nevertheless, the simple allegation of a cold cell is not sufficient to state a

constitutional claim. *See, e.g., Dixon*, 114 F.3d at 644 ("just because low temperature forces a prisoner to bundle up indoors during winter does not mean that prison conditions violate the Eighth Amendment"); *Mays v. Springborn*, 575 F.3d 643, 648-49 (7th Cir. 2009) (prisoner's complaint about inadequate winter clothing "did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter"); *cf., Smith v. Debruyn*, 1996 U.S. App. LEXIS 18424, at * 16 (7th Cir. 1996) (unpublished opinion) (affirming district court's dismissal pursuant to Rule 12(b)(6) where inmate claimed prison was unclean, noisy, drafty, cold, and unsafe); *Miller v. Ryker*, 2012 U.S. Dist. LEXIS 120785 at *22-27 (S.D. Ill. 2012) (dismissing claim that inmate's cell was unnaturally cold, extremely cold one night, that the inmate was denied an extra blanket, and that the water was freezing cold, because at most those claims demonstrated the inmate's cell was uncomfortable, "but that does not state a claim for cruel and unusual punishment"). At least one district court has relied on sources outside the record in assessing temperatures in response to claims of "below-freezing temperatures." *Gurley*, 2009 U.S. Dist. LEXIS 62995, at * 6 n.4 (citing "WGN Weather Center Blog"). Another consideration in assessing claims of cold temperatures is that whether or not the temperature is cold is a subjective feeling that varies from person to person. Simply asserting it was cold is not sufficient to meet the objective prong of the deliberate indifference test. *See Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000) (conclusory statements, indications of opinion or speculation do not produce a genuine issue of material fact); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999) *cert. denied*, 120 S. Ct. 446 (1999); *McMillian v. Svetanoff*, 878 F.2d 186, 191 (7th Cir. 1989) (subjective belief does not raise a genuine issue of material fact).

A plaintiff making cold temperature claims will have significant difficulty demonstrating that Sheriff Dart was deliberately indifferent. Twice a day, members of Facilities Management, which is part of Cook County, monitor the temperatures in the living units at Cook County Jail. *See Carreon v. Thomas*, 2014 U.S. Dist. LEXIS 1593, at * 10 (N.D. Ill. Jan. 7, 2014) (Pallmeyer, J.) (finding no deliberate indifference where Facilities Management staff checked the temperature in the area where the plaintiff was housed and the readings were between 67 and 78 degrees). The results of those tests are recorded on log sheets. Defendants will produce evidence, through those log sheets, that demonstrate that the temperatures in living units were within acceptable guidelines. Moreover, when temperatures were not within those guidelines, detainees were relocated to different areas with CCJ. In addition, any work orders that were submitted regarding complaints of cold temperatures will be provided, as well as how or if the complaint was resolved, which will demonstrate responsiveness to concerns about temperatures and thus show a lack of deliberate indifference. *See Hudson*, 2015 U.S. Dist. LEXIS 41981, at ** 73-74; *cf. Montano*, 535 F.2d at 571 (7th Cir. 2008).

B.    *Allegations of mold*

Many Plaintiffs have alleged they were exposed to mold at the CCJ. However, the mere presence of some dirt, mold, or mildew does not establish the type of severe deprivation needed to establish a constitutional violation. *See Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not cruel and unusual punishment). Although courts have indicated that the presence of mold can establish an unconstitutional living condition, those courts found that the presence of mold was sufficiently serious when it caused physical problems. *See Thomas v. Cox*, 2011 U.S. Dist. LEXIS 82041, at * 4 (S.D. Ill. July 27, 2011) (Murphy, J.); *see also Stanley v. Page,* 44

Fed. Appx. 13, 15 (7th Cir. 2002) (unpublished opinion) (prisoner complained of headaches from peeling paint in his cell, but presented no evidence establishing that the peeling paint was the actual cause of his headaches). However, conclusory allegations, without backing from medical or scientific sources, that the mold or mildew exposed Plaintiff to diseases and caused injuries which he would not otherwise have suffered are insufficient to survive summary judgment. *See Dixon*, 114 F.3d at 645; *see also Vasquez v. Frank*, 290 Fed. Appx. 927, 929 (7th Cir. 2008); *Walker*, 2010 U.S. Dist. LEXIS 85230, at ** 15-16.

In *Granville v. Dart,* the plaintiff alleged that he was subjected to unconstitutional living conditions at the CCJ by being exposed to, *inter alia*, mold and mildew. *Granville v. Dart*, 2011 U.S. Dist. LEXIS 25683, ** 5-8 (N.D. Ill. March 11, 2011) (Leinenweber, J.). The district court granted summary judgment on that claim in defendants' favor and held that the plaintiff failed to make a triable showing that mold and mildew caused any significant health problems. *Id.* at * 17. The court specifically held that the plaintiff's subjective belief that mold and mildew caused headaches and shortness of breath, without any medical evidence to substantiate that belief, is insufficient for the matter to proceed to trial. *Id.* at * 18.

Two courts in the Northern District recently granted summary judgment in favor of the defendants on claims of unconstitutional living conditions as a result of mold and mildew. In *Murray v. Godinez*, the plaintiff alleged that there was mold throughout his cell at the Stateville Correctional Center. *Murray v. Godinez*, 2016 U.S. Dist. LEXIS 27276, at * 8 (N.D. Ill. Feb. 19, 2016) (Norgle, J.). The undisputed facts showed that the plaintiff's only evidence of the presence of mold was his statement that he knew what mold looked like, and that at least some cleaning supplies were available to him. *Id.* at ** 8-9. The district court granted summary judgment in the defendants' favor on the plaintiff's claim that mold and mildew constituted an unconstitutional

living condition. *Id.* at *39. The court held that because of a lack of any evidence that the presence of mold caused the plaintiff any physical difficulties and that the plaintiff had access to cleaning supplies, he could not succeed on his claim.

Similarly, in *Moore v. Lemke*, the plaintiff's claim of exposure to mold and mildew failed to reach the level of being a constitutional violation. *Moore v. Lemke*, 2016 U.S. Dist. LEXIS 116678, at ** 12-13 (N.D. Ill. Aug. 30, 2016) (Coleman, J.). The court found that the plaintiff's allegations of the presence of mold and mildew amounted to nothing more than "relatively minor unpleasantness." *Id.*

Following the holdings and rationale of courts in this Circuit, unless a plaintiff can present evidence that the presence of mold or mildew caused him to suffer physical harm – and to support that claim with medical evidence linking the exposure and injury – he cannot defeat summary judgment.

C.    *Allegations of rodents/insects*

Pest infestations may form the basis of a Fourteenth or Eighth Amendment conditions of confinement claim. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996); *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). "Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have . . ., and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment." *Thomas,* 697 F.3d at 614; *see, e.g., Smith*, 803 F.3d at 312 (affirming dismissal of claim based on presence of rodents and insects where pretrial detainee did not describe the scope of the infestation or how it affected him). The failure of prison officials to keep vermin under control in a crowded jail does

9

not violate the Constitution. *Ware v. Fairman*, 884 F. Supp. 1201, 1207 (N.D. Ill. April 25, 1995) (Castillo, J.).

Whether a plaintiff has shown a physical injury from rodents or bugs may also defeat a claim of deliberate indifference. *White v. Monohan,* 326 Fed. Appx. 385, 388 (7th Cir. 2009) (describing as a "close call" whether plaintiff's five-year exposure to roaches, mice, bees, and wasps that stung and bit detainee leaving scars on his legs, arms, and back, stated a claim of unconstitutional condition of confinement); *Moore v. Monahan*, 2009 U.S. Dist. LEXIS 9266, at * 21 (N.D. Ill. Feb. 9, 2009) (St. Eve, J.) (five and one-half months of exposure to insects, during which inmate was never bitten, did not amount to a constitutional violation); *Gurley*, 2009 U.S. Dist. LEXIS 62995, at * 15 (granting summary judgment where the plaintiff's claim of "frequent encounters with rodents and cockroaches, however unpleasant, did not cause [the plaintiff] physical injury"); *Walker*, 2010 U.S. Dist. LEXIS 85230, at * 19 (although "the presence of vermin in the plaintiff's housing unit is entirely unacceptable [ ,] the plaintiff cannot recover damages because he has not shown physical injury."). Indeed, a plaintiff must not only show there is a persistent rodent or insect problem, but also "significant physical harm." *Antonelli*, 81 F.3d at 1431.

In *Sain v. Wood*, the Seventh Circuit held that the plaintiff's conditions did not amount to a constitutional deprivation where during a six-year period, the plaintiff often saw several cockroaches in his cell, was twice bitten by cockroaches, but a pest exterminator visited sprayed every month or month and a half. *Sain*, 512 F.3d 886, 894 (7th Cir. 2008). The fact that measures were taken to alleviate the presence of rodents and insects negated the presence of any deliberate indifference. *Id.* at 895.

10

Evidence of extermination services and a pest control hotline during some of time periods set forth in a number of Plaintiffs' complaint would support a finding that Defendant responded appropriately to complaints of insects or vermin.[2] *See, e.g., Sain*, 512 F.3d at 895 (no deliberate indifference where there were monthly exterminations and pest control spraying in response to the plaintiff's request); *Moore*, 2009 U.S. Dist. LEXIS 9266, at * 21 (extermination services twice a month belies the claim of deliberate indifference); *see also Barbosa v. McCann*, 2009 U.S. Dist. LEXIS 82010, at * 10 (N.D. Ill. Sept. 8, 2009) (Pallmeyer, J.) (cautioning the plaintiff that he would "need to show the defendants were aware of and deliberately indifferent to exposure to pests and that he suffered an injury as a result of the vermin-infested cell"). There is no set frequency with which exterminations need to be conducted in order to defeat a claim of deliberate indifference. *See Sain*, 512 F.3d at 895 (exterminations made monthly and in response to plaintiff's requests, certainly cannot support a claim of deliberate indifference); *Antonelli*, 81 F.3d at 1431 (an occasional extermination (twice in sixteen months) does not, by itself, negate a showing of deliberate indifference).

D.      *Allegation of a lack of water/plumbing issues*

Generally, claims relating solely to conditions of a detainee's sink or toilet do not constitute the denial of the minimal civilized measure of life's necessities. No matter how unpleasant the conditions in a detainee's cell might have been if he could not get water to wash his hands or lacked a functioning toilet, "unpleasant conditions that do not result in physical harm do not rise to the level of an Eighth Amendment violation." *Wade v. Haida*, 2013 U.S. Dist. LEXIS 11992 at ** 17-18 (S.D. Ill. Jan. 29, 2013) (Oberto, J.) (citing *Harris*, 839 F.2d at 1235) ("Leaky toilets and puddles are unpleasant but not unconstitutional" and "allegations of

---

2 The individual claims will dictate the type and extent of evidence of pest control, which will be presented depending on the time frame at issue.

water leaking from the toilet and accumulating on the cell floor do not rise to the level of extreme deprivation require to establish an objective violation").

As this Court has noted, a short-term breakdown of an inmate's in-cell plumbing does not rise to the level of a constitutional violation where the inmate is otherwise provided with food, beverages, access to showers and access to toilets. *Mims v. Hardy*, 2013 U.S. Dist. LEXIS 78615, at * 25 (N.D. Ill. June 5, 2013) (Kendall, J.); s*ee, e.g. Tesch v. County of Lake*, 157 F.3d 465, 476 (7th Cir. 1998) (denial of drinking water for several days is not a constitutional violation when inmates receive beverages with each of his three daily meals); *Muhammad v. Wilson*, 2006 U.S. Dist. LEXIS 63743, at * 6 (N.D. Ill. Aug. 16, 2006) (Leineweber, J.) (broken plumbing for seven days where plaintiff was given three meals a day, including beverages with each meal, "was an inconvenience" and "did not amount to a constitutional violation"); *Easter v. Cooper*, 1995 U.S. Dist. LEXIS 3026, at ** 8-9 (N.D. Ill. Mar. 10, 1995) (Norgle, J.) (no running water for seven days constitutes an inconvenience but does not violate the Constitution); *Davis v. Biller*, 2003 U.S. Dist. LEXIS 20811, at ** 5-6 (N.D. Ill. Nov. 18, 2003) (Reinhard, J.) (inmate has a basic right to drinking water but a dysfunctional sink alone is not necessarily cruel and unusual punishment); *see also Smith v. Melvin*, 1996 U.S. App. LEXIS 20592 at ** 5-6 (7th Cir. 1996) (unpublished opinion) (affirming motion to dismiss where the inmate complained his leaky toilet caused standing water on the floor and property damage). Put simply, "(l)eaky toilets and puddles are unpleasant but not unconstitutional." *Id*.; *see Geder*, 875 F. Supp. at 1341 (defective pipes, sinks and toilets, improperly cleaned showers and infestation by roaches and rats did not rise to level of an Eighth Amendment violation, alone or in combination).

In *Jihad v. Wright,* the plaintiff claimed being housed in a "dry cell" where he did "not have free access to running water and [was] not allowed to flush his toilet" for three days

12

violated the Eighth Amendment. *Jihad,* 1997 U.S. App. LEXIS 21624, at ** 3, 6 (7th Cir. 1997) (unpublished opinion). However, the appellate court affirmed dismissal of Jihad's case, holding that while "conditions incident to preserving all bodily excrement…are undesirable…it is well-settled that conditions which are temporary and do not result in physical harm are not actionable…" *Id.* at * 7.

In *Wilkins v. Merkle,* the district court, after analyzing findings from other districts, found that lack of running water in a cell or broken in-cell plumbing might be inconvenient, but it generally does not rise to the level of a constitutional violation. *Wilkins v. Merkle*, 2015 U.S. Dist. LEXIS 124809, ** 11-12 (N.D. Ill. Sept. 18, 2015) (Kocoras, J.); *Perez v. Hardy*, 2015 U.S. Dist. LEXIS 113488, at * 14 (N.D. Ill. Aug. 27, 2015) (Feinerman, J.) (quoting *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002)); *Muhammad*, 2006 U.S. Dist. LEXIS 63743, at * 6.

The presence of a non-functioning toilet does not, by itself, rise to the level of a constitutional violation. *See Knop v. Johnson*, 977 F.2d 996, 1013 (6th. Cir. 1992) ("[w]e do not agree that it violates the Eighth Amendment to require prisoners to use non-flushable toilets on occasion."); *see Clark v. Spey*, 2002 U.S. Dist. LEXIS 18122, at ** 3-8 (N.D. Ill. Sept. 26, 2002) (Guzman, J.) (use of a broken toilet, for no more than a few hours at a time, does not violate the Constitution). Although courts have found that under certain circumstances a broken toilet can violate the Constitution, most situations are typically extreme. *See, e.g., Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (six days without sanitation items in a cell which had blood and feces smeared on the walls and no working sink or toilet); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (prisoner "forced to live with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, without toilet paper, rusted out toilets, broken

windows, [and] ... drinking water contain[ing] small black worms which would eventually turn into small black flies" which were "strikingly reminiscent of the Black Hole of Calcutta"); *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (prisoner was denied cleaning supplies and confined for three days to cell that was smeared with human waste and had no running water); *Robinson v. DeTella*, 1997 U.S. Dist. LEXIS 1189, at * 12 (N.D. Ill. Feb. 5, 1997) (Conlon, J.) (broken toilet did not flush properly and exposed the inmate to his own waste, along with filthy state of cell and exposure to cold air through his window and holes in the cell walls for 68 days and the inmate received no cleaning supplies).

In *Neal v. Clark*, 938 F. Supp. 484 (N.D. Ill. Aug. 21, 1996) (Alesia, J.), the plaintiff was placed in a cell for three weeks with a toilet that would not flush on its own. 938 F. Supp. at 486-87. The court granted summary judgment in favor of the defendants and reasoned that, at most, the plaintiff was subjected to an inconvenience and discomfort for three weeks. *Id*. at 486-87. The plaintiff was able to brush his teeth, wash, take showers, and use the toilet; but "[m]ost importantly, [the plaintiff] suffered no physical harm, but simply was subjected to temporary conditions that wore on his patience, tolerance, and endurance." *Id*. at 486; *Henderson v. Rednour*, 2012 U.S. Dist. LEXIS 164678, at **10-11 (S.D. Ill. Nov. 19, 2012) (Murphy, J.) (dismissing complaint, in part, where the plaintiff's complaint that he was placed in a cell for at least 55 days without plumbing was nothing more than temporary discomfort).

E.    *Allegation of a lack of cleaning supplies*

There is no constitutional right to cleaning supplies.  *See Sanchez v. Walker*, 2010 U.S. Dist. LEXIS 134566, at ** 18-19 (N.D. Ill. Dec. 17, 2010) (Coleman, J.) (lack of cleaning supplies did not violate the Constitution because the plaintiff could have used available water and clothing to clean his cell); *see also Allen v. Hardy*, 2012 U.S. Dist. LEXIS 156163, at * 14

14

(N.D. Ill. Oct. 26, 2012) (Norgle, J.) ("Plaintiff's conclusory and broad allegations are insufficient to establish the lack of cleaning supplies resulted in the denial of the minimal civilized measure of necessities"); *Pritchett*, 2000 U.S. Dist. LEXIS 11559, at ** 23-24 (prisoner who was provided a bucket and mop once a month and had to use his own soap to clean his cell did not set forth a claim of unconstitutional condition of his confinement); *see also Morissette v. Peters,* 45 F.3d 1119, 1122-23 n.6 (7th Cir. 1995) (plaintiff's filthy cell, inadequate cleaning supplies, and exposed wires did not violate the Eighth Amendment). The availability of alternate means of cleaning one's cell may also be considered in determining if a constitutional violation has occurred where the denial of cleaning supplies has been alleged. *See Sanchez*, 2010 U.S. Dist. LEXIS 134566, at ** 18-19. Several weeks where a detainee was denied not only cleaning supplies, but also other hygiene- and cleaning-related items did not suffice to show the violation of a detainee's constitutional rights. *Smith v. Schwartz*, 2011 U.S Dist. LEXIS 56242, at * 8 (S.D. Ill. May 26, 2011) ((Murphy, J.) (denial of shower, cleaning supplies, and laundry service for thirty-two days did not rise to a constitutional violation).

                                                    Respectfully submitted,

                                                    ANITA ALVAREZ
                                                    State's Attorney of Cook County

                                                    /s/ Anthony E. Zecchin
                                                    Assistant State's Attorney
                                                    500 Richard J. Daley Center
                                                    Chicago, IL 60602
                                                    (312) 603-3373