**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD DONALD COX, | ) | |
| | ) | |
| *Plaintiff*, | ) | CASE NO: 1:13-cv-05874 |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS J. DART, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| | ) | |

---

## BRIEF OF RECRUITED AMICUS COUNSEL

Daniel M. Greenfield
Karim Basaria
Benjamin R. Brunner
Jeff Carroll
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
Tel.: (312) 853-7666
Fax: (312) 853-7036
Email:  dgreenfield@sidley.com

*Recruited Amicus Counsel*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      General Analysis Applicable to All Conditions of Confinement Claims ................ 1

II.     Analysis Applicable to Specific Allegedly Inadequate Conditions
        of Confinement .............................................................................................. 10

        A.     Mold .................................................................................................... 10

        B.     Asbestos .............................................................................................. 19

        C.     Plumbing and Leaks ............................................................................ 28

        D.     Pests .................................................................................................... 34

        E.     Temperature ........................................................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allah v. Bartkowski*,
574 Fed. Appx. 135 (3d Cir. 2014) ...................................................................39

*Anderson v. Morriso*n,
2016 WL 4488002 (7th Cir. Aug. 26, 2016) ......................................................33

*Anderson v. Woods*,
19 F.3d 18 (6th Cir. 1994) ...........................................................................25, 26

*Anton v. Sheriff of DuPage Cty.*,
47 F. Supp. 2d 993 (N.D. Ill. 1999) ..................................................................48

*Antonelli v. Shehan*,
81 F.3d 1422 (7th Cir. 1995) ...................................................................... *passim*

*Arnold v. Lane*,
1992 WL 159311 (N.D. Ill. Jul. 1, 1992) ...................................................... *passim*

*Bell v. Wolfish*,
441 U.S. 520 (1979) ......................................................................................1, 2

*Benjamin v. Fraser*,
161 F. Supp. 2d 151 (S.D.N.Y. 2001) .......................................................... *passim*

*Benson v. Godinez*,
919 F. Supp. 285 (N.D. Ill. 1996) .....................................................................47

*Bentz v. Butler*,
2014 WL 5293110 (S.D. Ill. Oct. 16, 2014) .......................................................46

*Bentz v. Hardy*,
638 Fed. Appx. 535 (7th Cir. Apr. 8, 2016) ..................................................45, 46

*Blackmon v. Garza*,
484 Fed. Appx. 866 (5th Cir. 2012) ..................................................................47

*Board v. Farnham*,
394 F.3d 469 (7th Cir. 2005) ...................................................................... *passim*

*Bono v. Saxbe*,
620 F.2d 609 (7th Cir. 1980) ...........................................................................41

*Braswell v. Corr. Corp. of America*,
    419 Fed. Appx. 622 (6th Cir. 2011) ............................................................ *passim*

*Bray v. Lain*,
    2013 WL 3677382 (N.D. Ind. July 12, 2013) ............................................ 36

*Brown v. Duvall*,
    2016 WL 3125002 (N.D. Ill. Jun. 3, 2016) ............................................... 36

*Budd v. Motley*,
    711 F.3d 840 (7th Cir. 2013) ..................................................................... *passim*

*Buffington v. O'Leary*,
    748 F. Supp. 633 (N.D. Ill. 1990) ............................................................. 30

*Burton v. Dart*,
    2015 WL 5175143 (N.D. Ill. Sept. 3, 2015) ............................................. *passim*

*Calhoun v. DeTella*,
    319 F.3d 936 (7th Cir. 2003) ..................................................................... 6

*Campbell v. Clinton*,
    2009 WL 5030787 (E.D. Mo. Dec. 14, 2009) ......................................... 41

*Cano v. City of New York*,
    44 F. Supp. 3d 324 (E.D.N.Y. Sept. 12, 2014) ...................................... 39

*Carty v. Farrelly*,
    957 F. Supp. 727 (D. V.I. 1997) ............................................................... 33

*Castor v. United States*,
    883 F. Supp. 344 (S.D. Ind. 1995) ..................................................... 19, 20

*Castro v. Cty. of Los Angeles*,
    2016 WL 4268955 (9th Cir. Aug. 15, 2016) .......................................... *passim*

*Chandler v. Crosby*,
    379 F.3d 1278 (11th Cir. 2004) ................................................................ 41

*Christopher v. Buss*,
    384 F.3d 879 (7th Cir. 2004) ..................................................................... 29

*City of Revere v. Mass. Gen. Hosp.*,
    463 U.S. 239 (1983) ..................................................................................... 3

*Colbert v. Gumusdere*,
    2016 WL 1181726 (S.D.N.Y. Mar. 25, 2016) .......................................... 9

*Collins v. Magana,*
2015 WL 7731840 (N.D. Ill. Dec. 1, 2015)................................................................48

*Conley v. Thurmer,*
2011 WL 2746176 (E.D. Wis. Jul. 14, 2011) .......................................................42

*Contreras v. Hawk,*
77 F.3d 484 (7th Cir. 1996) .................................................................21, 23

*Corselli v. Coughlin,*
842 F.2d 23 (2d Cir. 1988)................................................................46

*Cotton v. Walters,*
2015 WL 1930548 (S.D. Ill. Apr. 28, 2015)................................................ *passim*

*Crawford v. Artuz,*
1999 WL 435155 (S.D.N.Y. Jun. 24, 1999) .......................................................6

*Dace v. Smith-Vasquez,*
658 F. Supp. 2d 865 (S.D. Ill. 2009)................................................................48

*Daniel v. Cook County,*
2016 WL 4254934 (7th Cir. Aug. 12, 2016)................................................ *passim*

*Dartz v. Vienna Correctional Ctr.,*
2013 WL 5435806 (S.D. Ill. Sept. 30, 2013) ................................................ *passim*

*Davis v. Wessel,*
792 F.3d 793 (7th Cir. 2015) ................................................................9

*Del Raine v. Williford,*
32 F.3d 1024 (7th Cir. 1994) .......................................................43, 44, 46

*DeMallory v. Cullen,*
855 F.2d 442 (7th Cir. 1988) ................................................................10

*Dennis v. Thurman,*
959 F. Supp. 1253 (C.D. Cal. 1997) ................................................................28

*Despain v. Uphoff,*
264 F.3d 965 (8th Cir. 2001) .......................................................31, 32

*Diaz v. Edgar,*
831 F. Supp. 621 (N.D. Ill. 1993) ................................................ *passim*

*Diggs v. Godinez,*
1997 WL 308847 (N.D. Ill. Jun. 3, 1997)................................................................45

*Dixon v. Godinez*,
114 F.3d 640 (7th Cir. 1997) ................................................. *passim*

*Dobbey v. Lawshea*,
806 F.3d 938 (7th Cir. 2015) ..................................................5

*Edwards & Caldwell LLC v. Gulf Ins. Co.*,
2005 WL 2090636 (D.N.J. Aug. 29, 2005) .........................20

*Environmental Encapsulating Corp. v. City of New York*,
855 F.2d 48 (2d Cir. 1988).....................................................20

*Estelle v. Gamble*,
429 U.S. 97 (1976).................................................................23

*Farmer v. Brennan*,
511 U.S. 825 (1994)................................................... *passim*

*Flores v. O'Donnell*,
36 Fed. Appx. 204 (7th Cir. Mar. 26, 2002) ..................43, 49

*Foulds v. Corley*,
833 F.2d 52 (5th Cir. 1987) ..................................................38

*Fruit v. Norris*,
905 F.2d 1147 (8th Cir. 1990) ..............................................29

*Gabb v. Wexford Health Source, Inc.*,
2016 WL 397891 (S.D. Ill. Feb. 2, 2016) ...........................31

*Garcia v. Eau Claire Cty. Jail*,
2016 WL 3163174 (W.D. Wisc. Jun. 3, 2016) .......................9

*Gaston v. Coughlin*,
249 F.3d 156 (2d Cir. 2001)............................................38, 41

*Gates v. Cook*,
376 F.3d 323 (5th Cir. 2004) ............................... *passim*

*Gay v. Chandra*,
652 F. Supp. 2d 959 (S.D. Ill. 2009)....................................44

*Gillespie v. Crawford*,
833 F.2d 47 (5th Cir. 1987) ..................................................39

*Gillis v. Litscher*,
468 F.3d 488 (7th Cir. 2006) ...................................1, 4, 43

*Gordon v. Sheahan*,
  1997 WL 136699 (N.D. Ill. Mar. 24, 1997)....................................................47

*Goyner v. McDonald*,
  874 F. Supp. 464 (D. Mass. 1995) ...........................................26, 27, 28

*Gray v. Hardy*,
  826 F.3d 1000 (7th Cir. 2016) ...................................................... *passim*

*Halmon v. Greer*,
  2015 WL 2357632 (N.D. Ill. May 14, 2015)............................41, 47, 48

*Harper v. Dart*,
  2015 WL 6407577 (N.D. Ill. Oct. 21, 2015)..............................................9

*Helling v. McKinney*,
  509 U.S. 25 (1993)....................................................................................5

*Henderson v. DeRobertis*,
  940 F.2d 1055 (7th Cir. 1991) .................................................41, 43, 45

*Henderson v. Sheahan*,
  196 F.3d 839 (7th Cir. 1999) .......................................................3, 44

*Hildebrandt v. Illinois Dep't of Nat. Res.*,
  347 F.3d 1014 (7th Cir. 2003) ...............................................................15

*Hoffman v. Hertz*,
  2016 WL 879629 (S.D. Ill. Mar. 8, 2016) ...................................... *passim*

*Hoffman v. Lakin*,
  2015 WL 4090451 (S.D. Ill. Jul. 6, 2015) ..............................................10

*Holland v. Lane*,
  1995 WL 398891 (N.D. Ill. Jul. 3, 1995)..........................22, 23, 26, 27

*Holley v. Robinson*,
  911 F.2d 722 (4th Cir. 1990) .................................................................26

*Holman v. Thompson*,
  1992 WL 142349 (N.D. Ill. Jun. 18, 1992)........................22, 23, 26, 27

*Hoptowit v. Spellman*,
  753 F.2d 779 (9th Cir. 1985) .............................................................39, 40

*Hunt v. Levenhagen*,
  2014 WL 4261238 (N.D. Ind. Aug. 29, 2014)................................ *passim*

*Jackson v. Duckworth*,
  955 F.2d 21 (7th Cir. 1992) ................................................8, 26, 29

*Jackson v. Goord*,
  664 F. Supp. 2d 307 (S.D.N.Y. 2009).................................................26

*Jelinek v. Roth*,
  33 F.3d 56 (7th Cir. 1994) ................................................19

*Johnson v. City of New York*,
  2011 WL 1044852 (S.D.N.Y. Mar. 18, 2011) .......................47

*Johnson v. Clifton*,
  136 F. Supp. 3d 838 (E.D. Mich. Sept. 30, 2015)................9

*Karim v. Lemke*,
  2016 WL 910520 (N.D. Ill. Mar. 10, 2016)...................... *passim*

*Kingsley v. Hendrickson*,
  135 S. Ct. 2466 (2015) ........................................ *passim*

*Knight v. Wiseman*,
  590 F.3d 458 (7th Cir. 2009) ................................................4

*LaBounty v. Coughlin*,
  137 F.3d 68 (2d Cir. 1998)...................................... *passim*

*LaReau v. MacDougall*,
  473 F.2d 974 (2d Cir. 1972)................................................29

*Lewis v. Lane*,
  816 F.2d 1165 (7th Cir. 1987) ................................................44

*Mansoori v. Shaw*,
  2002 WL 1400300 (N.D. Ill. Jun. 28, 2002)................................................6

*Maxie v. Levenhagen*,
  2014 WL 3828292 (N.D. Ind. Aug. 4, 2014)................... *passim*

*Mays v. Springborn*,
  575 F.3d 643 (7th Cir. 2009) ................................................44

*McNeil v. Lane*,
  16 F.3d 123 (7th Cir. 1994) ................................... *passim*

*Meija v. McCann*,
  2009 WL 536001 (N.D. Ill. Mar. 3, 2009).................... *passim*

*Mena v. City of New York*,
    2014 WL 4652570 (S.D.N.Y. Sept. 18, 2014).......................................................39

*Metal Trades, Inc. v. United States*,
    810 F. Supp. 689 (D.S.C.1992)...........................................................................20

*Mitchell v. Foster*,
    2016 WL 4194570 (S.D. Ill. Aug. 9, 2016) ........................................................36

*Moore v. Monahan*,
    2009 WL 310963 (N.D. Ill. Feb. 9, 2009) .........................................................43

*Munson v. Hulick*,
    2010 WL 2698279 (S.D. Ill. Jul. 7, 2010) ...........................................12, 13, 16, 18

*Murithi v. Hardy*,
    2016 WL 890695 (N.D. Ill. Mar. 9, 2016)......................................................36, 37

*Murphy v. Walker*,
    51 F.3d 714 (7th Cir. 1995) .............................................................................44

*Myers v. Indiana Dep't of Corr.*,
    2016 WL 3619921 (7th Cir. Jul. 5, 2016).........................................................42

*Nicholas v. Edwards*,
    2006 WL 1519566 (N.D. Ill. May 30, 2006) .....................................................48

*Oliver v. Keller*,
    289 F.3d 623 (9th Cir. 2002) .............................................................................5

*Pack v. Artuz*,
    348 F. Supp. 2d 63 (S.D.N.Y. 2004)............................................................20, 21

*Patton v. Bechtler*,
    9 F.3d 109 (6th Cir. 1993) ...............................................................................25

*Pierce v. Cty. of Orange*,
    526 F.3d 1190 (9th Cir. 2008) ...........................................................................6

*Powell v. Lennon*,
    914 F.2d 1459 (11th Cir. 1990) ................................................................ *passim*

*Pratt v. City of New York*,
    929 F. Supp. 2d 314 (S.D.N.Y. 2013)..........................................................26, 27

*Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*,
    359 F.3d 226 (3d Cir. 2004)..............................................................................20

*Purser v. Donaldson*,
  2006 WL 2542932 (S.D. Ga. Aug. 30, 2006) .......................................................26

*Pyles v. Fahim*,
  771 F.3d 403 (7th Cir. 2014) .........................................................................33, 34

*Ramos v. Lamm*,
  639 F.2d 559 (10th Cir. 1980) .................................................................. *passim*

*Reid v. Nassau Cty. Sheriff's Dep't.*,
  2014 WL 4185195 (E.D.N.Y. Aug. 20, 2014)............................................. *passim*

*Rhodes v. Chapman*,
  452 U.S. 337 (1981)..............................................................................................2

*Rice v. North Carolina Dep't. of Corr.*,
  873 F.2d 1440 (4th Cir. 1989) ...............................................................25, 26, 27

*Riley-El v. Illinois*,
  2014 WL 3396531 (N.D. Ill. Jul. 10, 2014)....................................................30, 31

*Robinson v. Page*,
  170 F.3d 747 (7th Cir. 1999) .................................................................................6

*Sain v. Wood*,
  512 F.3d 886 (7th Cir. 2008) ...............................................................................37

*Salazar v. City of Chicago*,
  940 F.2d 233 (7th Cir. 1991) .................................................................................2

*Shannon v. Graves*,
  257 F.3d 1164 (10th Cir. 2001) ...........................................................................29

*Shelby Cty. Jail Inmates v. Westlake*,
  798 F.2d 1085 (7th Cir. 1986) .......................................................................2, 41

*Siglar v. Hightower*,
  112 F.3d 191 (5th Cir. 1997) .................................................................................6

*Simmons v. DeBruyn*,
  134 F.3d 374 (7th Cir. 1998) .........................................................................21, 23

*Smith v. Leonard*,
  244 Fed. Appx. 583 (5th Cir. 2007)......................................................................17

*Smith v. Peters*,
  631 F.3d 418 (7th Cir. 2011) .................................................................................6

*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009) ......................................................................25, 26, 27, 28

*Smith v. Walton*,
    2015 WL 2407548 (S.D. Ill. May 19, 2015)...................................................................30, 31

*Stewart v. Wexford Health Sources, Inc.*,
    2016 WL 37334 (S.D. Ill. Jan. 4, 2016)................................................................................30

*Tapia v. Sheahan*,
    1998 WL 919709 (N.D. Ill. Dec. 30, 1998).........................................................................48

*Thomas v. Illinois*,
    697 F.3d 612 (7th Cir. 2012) ................................................................................... *passim*

*Toussaint v. McCarthy*,
    597 F. Supp. 1388 (N.D. Cal. 1984) ............................................................................10, 34

*Townsend v. Fuchs*,
    522 F.3d 765 (7th Cir. 2008) ................................................................................... *passim*

*United States v. Cook Cty.*,
    2010 WL 3273501 (N.D. Ill. Aug. 17, 2010) ....................................................................4, 7

*Vance v. Rumsfeld*,
    701 F.3d 193 (7th Cir. 2012) .................................................................................................4

*Van Patten v. Allen Cty. Jail*
    2011 WL 4829106 (N.D. Ind. Oct. 11, 2011).................................................................11, 16

*Villanueva v. George*,
    659 F.2d 851 (8th Cir. 1981) ..............................................................................................39

*Vinning-El v. Long*,
    482 F.3d 923 (7th Cir. 2007) ................................................................................................1

*Walker v. Lakin*,
    2015 WL 2105858 (S.D. Ill. May 4, 2015)..........................................................................30

*Wallis v. Baldwin*,
    70 F.3d 1074 (9th Cir. 1995) .................................................................................... *passim*

*West v. Walker*,
    2007 WL 2608789 (N.D. Ill. Sept. 4, 2007) ....................................................................6, 31

*Westbrook v. Vienna Correctional Ctr.*,
    2013 WL 4505924 (S.D. Ill. Aug. 23, 2013) ............................................................ *passim*

*White v. Briley*,
   2008 WL 4425437 (N.D. Ill. Sept. 26, 2008) ................................................30, 31

*White v. Monohan*,
   326 Fed. Appx. 385 (7th Cir. 2009) .........................................................38

*Williams v. Adams*,
   935 F.2d 960 (8th Cir. 1991) ...................................................................32

*Williams v. DeTella*,
   1997 WL 603884 (N.D. Ill. Sept. 23, 1997) ............................................47

*Williams v. Fresno Cty. Dist. Attorney's Office*,
   2016 WL 5158943 (E.D. Ca. Sept. 20, 2016) ............................................9

*Williams v. Grant Cty.*,
   2016 WL 4745179 (D. Or. Sept. 12, 2016) ...............................................9

*Williams v. Griffin*,
   952 F.2d 820 (4th Cir. 1991) ...................................................................39

*Wilson v. Seiter*,
   501 U.S. 294 (1991) ...............................................................3, 4, 7, 42

*Zehner v. Trigg*,
   133 F.3d 459 (7th Cir. 1997) .....................................................................6

**Statutes**

225 ILCS 207/5(2) .........................................................................................24

225 ILCS 207/15 ...........................................................................................21

20 U.S.C. § 3601(a)(3) ..................................................................................20

20 U.S.C. § 4011(a)(3) ..................................................................................20

42 U.S.C. § 1997e(e) .......................................................................................5

Or. Rev. Stat. § 283.415 (1993) ...................................................................24

**Other Authorities**

29 C.F.R. § 1910.141(a)(5) ...........................................................................35

40 C.F.R. § 61.141 .........................................................................................21

36 Fed. Reg. 5931 (1971) ..............................................................................19

Richard Carr, "Chapter 5: Excreta-related infections and the role of sanitation in the control of transmission," *Water Quality: Guidelines, Standards, and Health*, World Health Organization (2001) ............................................................28

*Workplace Exposure to Asbestos:  Revise and Recommendations*, National Institute for Occupational Safety and Health, Department of Health and Human Services 81-103 (1980) ...........................................................20

"Guidance for Controlling Potential Risks to Workers Exposed to Class B Biosolids," Department of Health and Human Services (July 2002), http://www.cdc.gov/niosh/docs/2002-149/pdfs/2002-149.pdf ...............................................28

Fed. R. Evid. 706 ...........................................................................................................5

Fed. R. Evid. 803(8)........................................................................................................5

This Court recruited undersigned counsel to prepare an amicus brief "set[ting] forth the case law regarding [certain] conditions [of confinement] and if and when those conditions rise to the level of a Constitutional violation." (Doc. 124.) "Each pro se plaintiff who proceeds to dispositive briefing will have the benefit of the Amicus Brief to support his position." (*Id*.) Specifically at issue are allegations of: (1) excessive cold or heat; (2) vermin, rodents, or insects; (3) "water being too cold, water leaking on the floor, or sewage in the bathroom"; (4) mold in the "bathrooms and shower rooms"; (5) "leaking ceilings"; (6) "cold seeping in through broken windows"; and (7) "asbestos in the air." (*Id.*) As the case law addresses several of these conditions more generally, the above allegations are grouped into the following categories for purposes of discussion: (1) mold; (2) asbestos; (3) plumbing and leaks; (4) pests; and (5) temperature.

## I.     General Analysis Applicable to All Conditions of Confinement Claims

Inmates are entitled by the Constitution to conditions that do no represent significant risks to health and safety. *See, e.g.*, *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (housing inmates in unsanitary conditions, including broken plumbing, feces-smeared wall, and water-covered floor, may evince deliberate indifference); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) ("state must provide . . . reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing.)"); *Antonelli v. Shehan*, 81 F.3d 1422, 1432 (7th Cir. 1995) (noting that adequate past control is required by the constitution). "[T]he constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment and are distinguishable from an inmate's right not to be subjected to cruel and unusual punishment under the Eighth Amendment." *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

Specifically, while the Eighth Amendment only protects convicted inmates from punishment that is cruel and unusual, the Fourteenth Amendment protects pretrial detainees from punishment of any kind.[1] *Id.* (citing *Bell*, 441 U.S. at 535-39); *see also Shelby Cty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986) ("The issue with regards to ventilation is the same as with all alleged constitutional violations—does the condition amount to *punishment* of pretrial detainees or *cruel and unusual punishment* of convicted inmates").  Stated differently, action or inaction by jail personnel towards a pretrial detainee violates the Fourteenth Amendment if it amounts to punishment at all.  *See Salazar v. City of Chicago*, 940 F.2d 233, 239-40 (7th Cir. 1991) (finding that the Fourteenth Amendment "does not allow jailers to punish pretrial detainees at all, no matter how humane or common the punishment might be").  Whether this action or inaction is cruel and unusual under the Eighth Amendment is irrelevant.  *Id.*

Accordingly, the Supreme Court has described two different guides to be used by courts in reviewing conditions of confinement claims brought by pretrial detainees and convicted inmates.  First, the conditions of a pretrial detainee's confinement are "punishment," and therefore violate the Fourteenth Amendment, if they (1) are not "reasonably related to a legitimate governmental objective" or (2) are "arbitrary," "purposeless," or "excessive" in relation to that objective.  *Bell*, 441 U.S. at 538-39; *see also Board*, 394 F.3d at 477.  Second, the conditions of a convicted inmate's confinement are "cruel and unusual punishment," and therefore violate the Eighth Amendment, if they cause "the unnecessary and wanton infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).  Courts applying these two guides have noted that they entitle "pretrial

---

[1] As discussed below, subsequent to the Supreme Court's decision last term in *Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015), and the Ninth Circuit's recent *en banc* decision in *Castro v. Cty. of Los Angeles*, No. 12-56829, 2016 WL 4268955 (9th Cir. Aug. 15, 2016), this distinction may be increasingly significant.

detainees … to *at least* as much protection as … convicted prisoners." *Board*, 394 F.3d at 477-78; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (same). Indeed, as discussed below in more detail, after the Supreme Court's decision last term in *Kingsley v. Hendrickson,* 135 S. Ct. 2466 (2015) and the Ninth Circuit's recent *en banc* decision in *Castro v. Cty. Of Los Angeles*, No. 12-56829, 2016 WL 4268955 (9th Cir. August 15, 2016), it is reasonable to think that pretrial detainees may be entitled to *more* protection than convicted prisoners.

Despite the broad recognition that pre-trial detainees cannot be subjected to any punishment whereas post-conviction prisoners may be subjected to punishment so long as it is neither cruel nor unusual, presently, the Seventh Circuit still "appl[ies] the same standard to [conditions of confinement] claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board*, 394 F.3d at 478 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). That is, currently, the Seventh Circuit uses the same standards to review conditions of confinement claims brought by pretrial detainees and convicted prisoners. *Id.* In either case, the plaintiff must establish that (1) the conditions of his or her confinement posed a substantial risk of serious harm to his or her health and that (2) the prison official was deliberately indifferent to that risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Townsend*, 522 F.3d at 773. Courts refer to the two prongs of this test as the "objective component" and the "subjective component," respectively. *See, e.g.*, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Burton v. Dart*, No. 14 C 10297, 2015 WL 5175143, at *2 (N.D. Ill. Sept. 3, 2015) (citing *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994)).

A court's analysis begins with the objective component, which asks whether the alleged condition was "objectively, 'sufficiently serious,'" and, in making this decision, looks to the

condition itself. *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298); *see also Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (same); *Diaz v. Edgar*, 831 F. Supp. 621, 623-24 (N.D. Ill. 1993) (same). In order to establish that an alleged condition is sufficiently serious, a plaintiff must demonstrate that the condition denied them "the minimal civilized measure of life's necessities," thereby creating a "substantial risk of serious harm" to his or her health. *Farmer*, 511 U.S. at 834; *see also Townsend*, 522 F.3d at 773.

Importantly, even if an alleged condition of confinement is not sufficiently serious to be a constitutional violation standing alone, it may still "violate the Constitution in combination" with other allegedly inadequate conditions of confinement if they have "'a mutually enforcing effect that produces the deprivation of a single, identifiable human need' such as food, warmth, or exercise." *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson*, 501 U.S. at 304); *see also Vance v. Rumsfeld*, 701 F.3d 193, 205-06 (7th Cir. 2012) (same). In other words, two or more conditions of confinement may work together to deprive someone of a constitutional right even if neither condition standing alone would do so. *Id.* Under these standards, courts have found that prisoners are entitled to be provided with, among other things, adequate shelter, hygiene, sanitation, and warmth. *See, e.g.*, *Farmer*, 511 U.S. at 822-23; *see also Wilson*, 501 U.S. at 304; *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis*, 468 F.3d at 493. Notably, the Seventh Circuit has held that a 2008 report prepared by the Civil Rights Division of the U.S. Department of Justice in connection with *United States v. Cook Cty.*, No. 10 C 2946, 2010 WL 3273501 (N.D. Ill. Aug. 17, 2010), attending to allegedly deficient conditions at Cook County Jail (*United States v. Cook Cty.*, Doc. 1-3) ("DOJ Report"), is admissible "for the truth of

its substance" under Fed. R. Evid. 803(8).[2] *Daniel v. Cook Cnty.*, No. 15-2832, 2016 WL 4254934, at *12 (7th Cir. Aug. 12, 2016). That is, the Seventh Circuit has held that the DOJ Report can be used as evidence of the conditions that existed at Cook County Jail. *Id.*

In connection with satisfying the objective component of a conditions of confinement claim, the Supreme Court has held that a prisoner need not prove a current physical injury in order to establish a substantial "risk of serious [harm]." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). Rather, the Constitution also protects a prisoner's right to be free from conditions that "pose an unreasonable risk of serious damage to *his future health.*" *Id.* at 35 (emphasis added); *see also Board*, 394 F.3d at 479 (finding equally unconstitutional an unreasonable risk of serious damage to both the current and future health of a prisoner). As the Supreme Court explained, it "would be odd to deny [relief] to inmates who plainly proved an unsafe, life-threatening condition in their prisons on the ground that nothing yet had happened to them … [A] remedy for unsafe conditions need not await a tragic event." *Helling*, 509 U.S. at 33; *see also id.* (stating that a prisoner "could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery"). In some cases, courts have found it appropriate to appoint a neutral expert pursuant to Fed. R. Evid. 706 to assist with this analysis. *See, e.g.*, *Dobbey v. Lawshea*, 806 F.3d 938, 941 (7th Cir. 2015).

Although the Prison Litigation Reform Act of 1996 (the "PLRA") prohibits the recovery of compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. § 1997e(e), a physical injury may not always be observable, diagnosable, or require treatment by a medical care professional. *See, e.g.*, *Oliver v.*

---

[2] Defendants take the position that the Monitor's Reports issued in *United States v. Cook County* should also be admissible as substantive evidence of the contemporaneous conditions at Cook County Jail. (Doc. 178.) However, the Seventh Circuit has recently rejected this argument. *See Daniel*, 2016 WL 4254934, at *12.

*Keller*, 289 F.3d 623, 628 (9th Cir. 2002); *Mansoori v. Shaw*, No. 99 C 6155, 2002 WL 1400300, at *4 (N.D. Ill. Jun. 28, 2002) (stating that injury need not be proved through objective evidence). Additionally, many courts, including those within the Seventh Circuit, have found that the increased risk of a future injury satisfies the PLRA's physical injury requirement. *See, e.g.*, *West v. Walker*, No. 06 C 4350, 2007 WL 2608789, at *6 (N.D. Ill. Sept. 4, 2007) (finding that "documentably increased likelihood of future harm" from secondhand smoke is a physical injury); *Crawford v. Artuz*, No. 98 Civ. 0425(DC), 1999 WL 435155, at **5-7 (S.D.N.Y. Jun. 24, 1999) (finding that asbestos exposure satisfied the PLRA's physical injury requirement despite no current physical injury); *see also Robinson v. Page*, 170 F.3d 747, 749 (7th Cir. 1999) (declining to decide whether physical injury "must be a palpable, current injury (such as lead poisoning) or a present condition not injurious in itself but likely to ripen eventually into a palpable physical injury"); *but see Zehner v. Trigg*, 133 F.3d 459 (7th Cir. 1997) (concluding that asbestos exposure claim not actionable absent a claim of physical injury). And finally, courts have generally found that a physical injury "must be more than *de minis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *see also, e.g.*, *Braswell v. Corr. Corp. of America*, 419 Fed.Appx. 622, 626-27 (6th Cir. 2011); *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1224 (9th Cir. 2008). In other words, an injury does not have to be substantial to satisfy the PLRA. Separately, the PLRA's physical injury requirement does not affect a prisoner's right to seek punitive or nominal damages. *Calhoun v. DeTella*, 319 F.3d 936, 940-42 (7th Cir. 2003); *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012); *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).

The next stage of the analysis is the subjective component, which asks whether the prison official acted with a "sufficiently culpable state of mind" to be deemed "deliberately indifferent."

*Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03); *see also McNeil*, 16 F.3d at 124. In making this assessment, courts looks to the jail official's subjective intent. *Farmer*, 511 U.S. at 834. In order to establish that the defendant acted with deliberate indifference, the plaintiff must demonstrate that the jail or prison official was "both … aware of facts from which the inference could be drawn that a substantial risk of harm exists, and … also dr[ew] the inference." *Farmer*, 511 U.S. at 837; *Townsend*, 522 F.3d at 773. However, the official need not have acted "believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. A jail official may also be deliberately indifferent where he responds inadequately or ineffectively to substandard jail conditions despite being aware of them. *See, e.g., Townsend*, 522 F.3d at 773 (deliberate indifference made out where officials know an inmate faces a substantial risk of serious harm and "fail to take reasonable measures to address it"); *Gray*, 826 F.3d at 1008-09 (same).

Whether the prison official had knowledge of the risk is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. As set forth in Part II below, courts have also found the knowledge requirement satisfied in a variety of ways, including but not limited to the following: institutional grievances, letters, and oral or written complaints; notice of health code violations; consent decrees; regulatory citations; work orders; government reports; and prior law suits. In *Daniel*, the Seventh Circuit also suggested that the DOJ Report, the May 13, 2010 Agreed Order (*United States v. Cook Cty.*, Doc. 3-1) ("Agreed Order"), and the Monitor's Reports prepared in connection with *United States v. Cook County*, are admissible to establish knowledge of allegedly inadequate conditions. 2016 WL 4254934, at *12. Additionally, "a fact-finder may

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (finding that a prison official's failure to act in the face of known or obvious dangers suggests that the official actually wanted the prisoner to suffer harm); *Board*, 394 F.3d at 478 (defining "deliberate indifference" as "a conscious disregard of known or obvious dangers").

The Seventh Circuit currently analyzes all conditions of confinement claims under the two-pronged (objective and subjective) approach outlined above. However, as noted above, a recent decision from the Supreme Court has called into question the applicability of the subjective standard to claims brought by pretrial detainees. In *Kingsley*, the Supreme Court considered how to prove an excessive force claim brought under the Fourteenth Amendment. 135 S. Ct. at 2470. Specifically, the question addressed by *Kingsley* was whether a pretrial detainee must establish that the prison official was *subjectively aware* that his or her use of force was unreasonable, or only that the prison official's use of force was *objectively unreasonable*. *Id.* In other words, *Kingsley* considered whether the subjective deliberate indifference standard applies to Fourteenth Amendment excessive force claims. At the outset, the Supreme Court noted that the Fourteenth Amendment's Due Process Clause prohibits the punishment of pretrial detainees in any way, and, therefore, courts assessing such claims need only determine whether the alleged action (or inaction) constitutes punishment (and not whether that punishment is cruel and unusual). *Id.* at 2475. The Supreme Court then held that, to succeed on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. As a result, the subjective standard (that is, deliberate indifference) is no longer applicable to excessive force claims brought by pretrial detainees.

In *Castro*, the *en banc* Ninth Circuit extended the objective standard set forth in *Kingsley* to failure-to-protect claims brought by pretrial detainees under the Fourteenth Amendment. 2016 WL 4268955. To succeed on similar claims, the Ninth Circuit held that the pretrial detainee must establish that "a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Id.* at *7. The Ninth Circuit, relying on *Kingsley*, described this test as "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* This ruling may suggest that the federal courts of appeal will extend the objective standard to all Fourteenth Amendment pretrial detainee claims. Thus, the deliberate indifference standard applicable to claims brought under the Eighth Amendment, may cease to apply to pretrial detainee claims challenging conditions of confinement as district courts in several Circuits have suggested.[3] Indeed, district courts within the Seventh Circuit have also recently observed that *Kingsley* may have far-reaching implications in this regard.[4] In light of the evolving standards in this area, plaintiffs can

---

[3] *See Williams v. Fresno Cty. Dist. Attorney's Office*, No. 1:16-cv-00734-DAD-MJS, 2016 WL 5158943, at *4 (E.D. Ca. Sept. 20, 2016) (extending *Castro* to inadequate-medical-care claim); *Williams v. Grant Cty.*, No. 15-01760, 2016 WL 4745179, at *5 (D. Or. Sept. 12, 2016) (same); s*ee also Colbert v. Gumusdere*, No. 15-1537, 2016 WL 1181726, at *4 n.4 (S.D.N.Y. Mar. 25, 2016) ("The Court acknowledges that the Supreme Court's decision in *Kingsley*, which held that 'the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one,' may have implications for cases such as this one, in which a pretrial detainee has asserted a deliberate indifference claim") (internal citations omitted); *Johnson v. Clifton*, 136 F. Supp. 3d 838, 844 (E.D. Mich. Sept. 30, 2015) ("After *Kingsley*, it is unclear whether courts should continue to use the Eighth Amendment's deliberate-indifference standard to analyze inadequate-medical-care claims brought by pretrial detainees pursuant to the Due Process Clause").

[4] *See Harper v. Dart*, No. 14 C 01237, 2015 WL 6407577, at *3 (N.D. Ill. Oct. 21, 2015) ("[T]here is an argument that *Kingsley*, which adopted an objective standard for excessive force claims brought by pretrial detainees, may be a better fit [for restraint claims]. The parties here have not raised that possibility but should consider whether to do so at the summary judgment stage") (internal citations omitted); *Garcia v. Eau Claire Cty. Jail*, No. 16-cv-18-jdp, 2016 WL 3163174, at *3 (W.D. Wisc. Jun. 3, 2016) ("The Seventh Circuit has indicated that for a pretrial detainee's claims, the alleged conditions must be objectively serious enough to amount to a constitutional deprivation, and the defendant prison official must possess a sufficiently culpable state of mind. Yet this statement is somewhat at odds with the Supreme Court's holding that in excessive force cases, pretrial detainees must show only that the force used on them was objectively unreasonable—there is no subjective element") (internal quotations and citations omitted); *id.* at *3 n.2 ("Perhaps *Kingsley* is limited to excessive force claims, and not claims about conditions of confinement. But that would be a highly technical distinction and one that the Seventh Circuit appears to reject") (citing *Davis v. Wessel*, 792 F.3d 793, 801 (7th Cir. 2015) ("There was great debate between the parties as to whether *Kingsley*—

preserve the argument for appeal by also arguing that the objective standard set forth in *Kingsley* and extended in *Castro* applies to his or her conditions of confinement claim.[5]

## II.  Analysis Applicable to Specific Allegedly Inadequate Conditions of Confinement

### A.  Mold

The Seventh Circuit has "repeatedly stressed that the Eighth Amendment requires prison officials to maintain minimal sanitary and safe prison conditions." *DeMallory v. Cullen*, 855 F.2d 442, 445 (7th Cir. 1988). Thus, it has "not hesitated to award damages to inmates when prison conditions have fallen below the threshold of decency ensured by the Eighth Amendment." *Id.*; *see also Burton*, 2015 WL 5175143, at *2 ("While it is true that prisoners cannot expect the amenities, conveniences and services of a good hotel, prisoners are entitled to shelter, which includes, among other things, reasonably adequate sanitation") (internal quotations and citations omitted); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide an inmate with shelter which does not cause his degeneration or threaten his mental or physical well being," including access to "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities"); *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1411 (N.D. Cal. 1984) ("A sanitary environment is a basic human need that a penal institution must

---

which originated from our circuit—controls this case. Although *Kingsley* was an *excessive force* due process case, unlike Davis's case, its discussion is instructive to our due process analysis"); *Hoffman v. Lakin*, No. 15-cv-00648-NJR, 2015 WL 4090451, at *2 n.1 (S.D. Ill. Jul. 6, 2015) ("Following the United States Supreme Court's *Kingsley* decision, it is unclear whether a detainee challenging the conditions of his confinement must also allege that the defendant acted with a certain state of mind, namely maliciously and sadistically with the intent to cause harm, or whether an allegation that defendant's actions were objectively unreasonable will suffice. … Until this Court receives further guidance on the appropriate standard to be applied in these cases, this Court will allow claims that otherwise state a conditions of confinement claim under the Fourteenth Amendment to pass its threshold screening under 28 U.S.C. § 1915A(a)").

[5] To preserve this argument for appeal, a plaintiff may wish to argue the following in the alternative: "The Defendant made an intentional decision that put plaintiff at substantial risk of suffering serious harm. Defendant did not take reasonable available measures to avoid that risk, even though a reasonable jail officer in the circumstances would have understood the high degree of risk involved, thereby making the consequences of the defendant's conduct obvious." Plaintiffs in this and other circuits should also continue to argue that Defendants conduct satisfies the current subjective standard.

provide for all inmates"), *aff'd in part and rev'd in part on other grounds*, 801 F.2d 1080 (9th Cir. 1986). The Seventh Circuit, the United States District Court for the Northern District of Illinois ("Northern District of Illinois"), and other courts across the country have found that the existence of mold, mildew, or fungus in a prison can create unsanitary and unhygienic conditions that fall short of the constitutional entitlement to adequate shelter. *See, e.g.*, *Townsend*, 522 F.3d at 769; *Burton*, 2015 WL 5175143, at *1; *Ramos*, 639 F.2d 559 (10th Cir. 1980).

Regarding the objective prong, a prisoner's exposure to unreasonable amounts of mold in his or her cell[6] or another area of the prison, such as in communal showers or bathrooms or in the kitchen,[7] is a "sufficiently serious" harm to satisfy the objective element of a conditions of confinement claim. *See, e.g.*, *Townsend*, 522 F.3d at 765, 768-69, 773. Importantly, a prisoner's exposure to mold that is not itself sufficiently serious may still be an actionable constitutional violation in combination with other unsanitary conditions.[8] As just one example, some courts

---

[6] *See, e.g.*, *Townsend*, 522 F.3d at 769 ("forced to sleep on a wet and moldy mattress"); *Budd*, 711 F.3d at 842 ("toilets covered in mold"); *Karim v. Lemke*, No. 15 C 4803, 2016 WL 910520, at *1 (N.D. Ill. Mar. 10, 2016) ("housing unit"); *Hoffman v. Hertz*, No. 15-cv-00289-MJR-SCW, 2016 WL 879629, at *3 (S.D. Ill. Mar. 8, 2016) ("in the cell block"); *Hunt v. Levenhagen*, No. 1:14-CV-221 JD, 2014 WL 4261238, at *1 (N.D. Ind. Aug. 29, 2014) ("on the walls"); *Meija v. McCann*, No. 08 C 4534, 2009 WL 536001, at *1 (N.D. Ill. Mar. 3, 2009) ("cells are in a state of disrepair, including … exposure . . . to black mold"); *Ramos*, 639 F.2d at 569 ("in the cells"); *Braswell*, 419 Fed. Appx. at 624 ("bacteria growing in the [prisoner's] toilet"); *Reid v. Nassau Cty. Sheriff's Dep't.*, No. 13-CV-1192 (SJF)(SIL), 2014 WL 4185195, at **2, 4-5 (E.D.N.Y. Aug. 20, 2014) ("cell and walls"; "air-ducts"; "toilets in cells").

[7] *See, e.g.*, *Burton*, 2015 WL 5175143, at *1 ("exposed to mold and mildew" throughout the various divisions of the prison and in the communal showers); *Cotton v. Walters*, No. 15-cv-364-JPG, 2015 WL 1930548, at *1 (S.D. Ill. Apr. 28, 2015) ("Jail showers are contaminated with black mold"); *Van Patten v. Allen Cty. Jail*, No. 1:11-CV-73 PS, 2011 WL 4829106, at *1 (N.D. Ind. Oct. 11, 2011) ("the walls, railings, and showers in his cell block"); *Westbrook v. Vienna Correctional Ctr.*, No. 13-cv-00751-GPM, 2013 WL 4505924, at *1 (S.D. Ill. Aug. 23, 2013) (mold in communal showers); *Dartz v. Vienna Correctional Ctr.*, No. 13-cv-00889-JPG, 2013 WL 5435806, at *1 (S.D. Ill. Sept. 30, 2013) (same); *Ramos*, 639 F.2d at 569 ("in the … shower area"), *id.* at 571 ("Food preparation surfaces and cooking equipment are not properly cleaned and therefore provide areas for significant bacterial growth"; "walk-in coolers where food is stored have mold growing on them"); *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 161 (S.D.N.Y. 2001) ("fester[ing] in shower rooms and restrooms"); *Reid*, 2014 WL 418195, at **1, 4 ("all over the jail"; "showers"); *Karim*, 2016 WL 910520, at *1 ("inmates' meals were both transported on unsanitary carts and stored in rodent and mold infested areas").

[8] *See e.g.*, *Karim*, 2016 WL 910520, at *2 ("Here, it is certainly plausible that the numerous allegedly inadequate conditions, including unsanitary cooking and living quarters, the constant presence of vermin, and failure to adequately provide basic cleaning items, taken all together, would amount to an unconstitutional condition of

find that corrections officials' failure to provide an inmate with the necessary supplies to clean the mold can compound the seriousness of the unsanitary conditions and escalate an otherwise deficient mold exposure claim to the level of a constitutional violation.[9] And, finally, some courts emphasize that exposure to a toxic substance known as *stachybotrys* or "black mold" poses particularly significant health risks,[10] although no court has found that the type of mold that a prisoner is exposed to is dispositive of his or her claim.

Regarding the subjective prong, as is the case for any other conditions claim, whether the prison official had knowledge of the risk is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence. … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. For example, courts commonly find deliberate indifference when a prisoner files grievances, sends letters, or complains to prison officials about his or her exposure to mold.[11] Deliberate indifference may also be established where the unsanitary conditions were

---

confinement. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (providing that a condition that may not ordinarily violate the Eighth Amendment may nonetheless do so if in combination with other factors)").

[9] *See, e.g.*, *Budd*, 711 F.3d at 843 ("[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, states a claim for relief"); *Karim*, 2016 WL 910520, at *1 ("not provided with adequate cleaning supplies and therefore was unable to clean his living space, leading to unsanitary living conditions"); *Meija*, 2009 WL 536001, at *1 ("Prisoners are not provided cleaning supplies to maintain their cells"); *Munson v. Hulick*, No. 10- cv-52-JPG, 2010 WL 2698279, at *1 (S.D. Ill. Jul. 7, 2010) ("inadequate cleaning supplies for the cells"); *Reid*, 2014 WL 4185195, at *2 ("refused [prisoner's] request for cleaning supplies 'to sanitize the cell and walls'").

[10] *See, e.g.*, *Hoffman*, 2016 WL 879629, at *3 ("toxic mold"); *Cotton*, 2015 WL 1930548, at *1 ("black mold"); *Hunt*, 2014 WL 4261238, at *2 (same); *Maxie v. Levenhagen*, No. 3:13-CV-1280 PS, 2014 3828292, at *2 (N.D. Ind. Aug. 4, 2014) (same); *Meija*, 2009 WL 536001, at *1 (same); *Westbrook*, 2013 WL 4505924, at *1 (same); *Dartz*, 2013 WL 5435806, at *1 (same); *Reid*, 2014 WL 4185195, at **1-5 (same).

[11] *See, e.g.*, *Townsend*, 522 F.3d at 769 (plaintiff "personally complained about his mattress to [defendant] and requested a new, clean mattress for his cell"); *Karim*, 2016 WL 910520, at *1 (plaintiff "raised these issues to the prison administration through the institutional grievance process"); *Meija*, 2009 WL 536001, at *4 ("grievances attached to [the plaintiff's] amended complaint"); *Cotton*, 2015 WL 1930548, at *4 ("Plaintiff's letters to Defendants … may suffice to meet the subjective requirement of a deliberate indifference claim"); *Hunt*, 2014 WL 4261238, at *1 (plaintiff "filed several grievances about these conditions but never received any response"); *Maxie*, 2014 WL 3828292, at *2 (plaintiff "complained to [defendants] about these conditions, but they ignored him and/or

the result of a lack of routine maintenance and cleaning programs at the prison.[12]  Some courts also rely on health code violations, consent decrees, and other regulatory citations in assessing whether prison officials were aware of the mold growing in the prison.[13]  Moreover, where jail officials make an effort to remedy an inadequate condition, they may still be found to be deliberately indifferent if those efforts are inadequate.  *See, e.g.*, *Gray*, 826 F.3d at 1008.  Finally, the Northern District of Illinois, for its own part, has found knowledge of senior personnel based solely upon their position of authority.[14]

The Seventh Circuit has not hesitated to conclude that a prisoner's exposure to mold violates the Constitution.  For example, in *Townsend*, the Seventh Circuit reversed the district court's decision granting a prison official's motion for summary judgment on a prisoner's mold exposure claim.  522 F.3d 765.  In that case, the plaintiff alleged that he was housed in a "wet cell" (a cell containing a shower that drained through the cell's floor) and, as result, his mattress had become damp and moldy.  *Id.* at 772.  Despite the plaintiff's complaints and requests for a new mattress, the defendant did not replace the unsanitary mattress for approximately two months.  *Id.* at 768-69.  On these facts, as alleged, the Seventh Circuit concluded that the

did nothing to remedy these issues"); *Van Patten*, 2011 WL 4829106, at *1 (plaintiff "filed a grievance about the mold but the issue was not remedied"); *Munson*, 2010 WL 2698279, at *2 ("Defendants were actually aware of the conditions … from the grievances that he has filed and from grievance filed by other inmates"); *Reid*, 2014 WL 4185195, at *18 ("plaintiffs and other inmates … filed numerous grievances and/or made complaints about the challenged conditions").

[12] *See Ramos*, 639 F.2d at 570 ("[M]any of the health and sanitation deficiencies" were "the result of a lack of routine maintenance and cleaning programs").

[13] *See, e.g.*, *Hunt*, 2014 WL 4261238, at *1 (defendant "routinely fined by the health department for health code violations"); *Ramos*, 639 F.2d at 571 (state agency found that prison facilities did not comply with sanitation regulations and, as a result, "refused to issue a Certificate of Inspection"); *Benjamin*, 161 F. Supp. 2d at 159 (unsanitary conditions, were "largely the continuations of deficiencies that have been known, obvious, and commented on" pursuant to a "Consent Decree" issued by courts in other proceedings).

[14] *See Burton*, 2015 WL 5175143, at *3 ("[Cook Country Sherriff Thomas Dart's] position justifies an inference that the official had some direct involvement in the alleged violation").

plaintiff's exposure to the moldy mattress was "sufficiently serious to constitute an Eighth Amendment violation." *Id.* at 773. In addition, the Court made clear that any dispute as to whether the plaintiff had notified the defendant about the condition of his mattress, or whether the defendant was aware that the mattress posed significant health risks, came "down to a good old-fashioned swearing contest" that could not be resolved on summary judgment. *Id.* at 774-75.

In another case before the Seventh Circuit, the plaintiff alleged that he was jailed in an unsanitary cell that contained, among other things, a toilet covered in mold. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). To make matters worse, the plaintiff further alleged that prison officials had refused to provide him with any supplies to clean the toilet or the rest of his cell. *Id*. The Court determined that the plaintiff had stated a claim for relief. *Id.* at 843. In so holding, the Court recognized that the plaintiff's exposure to mold and other unsanitary conditions posed a "heightened risk of future injury" that, apart from any current physical injury, was itself constitutionally actionable. *Id.* (citing *Thomas v. Illinois*, 697 F.3d 612, 615-16 (7th Cir. 2012)). Accordingly, the Seventh Circuit reversed the district court's dismissal of the plaintiff's mold-based conditions of confinement claim and allowed the claim to proceed to summary judgment. *Id.* at 844.

The Northern District of Illinois has followed the Seventh Circuit's lead, often finding that jail and prison officials' deliberate indifference to a prisoner's exposure to mold violates the prisoner's constitutional rights. For example, in *Burton*, the court found that the plaintiff's allegation that he had been exposed to mold and mildew throughout Divisions 2, 8, and 10 of the Cook County Jail, as well as fungus in the communal showers, was "sufficiently serious" to violate the Eighth Amendment. 2015 WL 5175143, at **1-2. In addition, while the pro se plaintiff did not allege that the defendant, Cook County Sheriff Tom Dart, was personally

involved in the plaintiff's exposure to these "unsanitary/unhygienic conditions," the court explained that Sheriff Dart's position of authority at the prison "justifie[d] an inference that [he] had some direct involvement in the alleged violation" that was sufficient to survive a motion to dismiss. *Id.* at *3; *see also id.* ("Plaintiff's allegations support an inference of a systemic problem within the Cook County Jail that, at least at this stage of the litigation, supports an inference of involvement by Dart.").

Likewise, in *Karim v. Lemke*, this Court found that the plaintiff's allegation that the food served to him was stored in "mold infested areas," as well as his allegation that "dangerous conditions such as mold" existed within his housing unit, were sufficient to satisfy the objective element of a conditions of confinement claim. No. 15 C 4803, 2016 WL 910520, at **1-2 (N.D. Ill. Mar. 10, 2016). The Court also found that grievances filed by the plaintiff supported an inference that the defendants "were aware of the various issues [alleged by the plaintiff] and nevertheless failed to address them, effectively turning a 'blind eye.'" *Id.* at *2 (quoting *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003)). *See also Meija v. McCann*, No. 08 C 4534, 2009 WL 536001, at **1, 3-4 (N.D. Ill. Mar. 3, 2009) (finding the following allegations adequate to survive motion to dismiss: (1) plaintiff was not provided any cleaning supplies to clean mold present in his cell; and (2) plaintiff had filed grievances that notified prison officials of the unsanitary conditions).

Other district courts in the Seventh Circuit have also found that a prisoner's exposure to mold can violate the Eighth and/or Fourteenth Amendments. *See, e.g.*, *Cotton v. Walters*, No. 15-cv-364-JPG, 2015 WL 1930548, at **1, 4 (S.D. Ill. Apr. 28, 2015) (finding that mold infestation in the communal showers rose to the level of a constitutional violation); *Hoffman v. Hertz*, No. 15-cv-00289-MJR-SCW, 2016 WL 879629, at *3 (S.D. Ill. Mar. 8, 2016) ("The

existence of toxic mold [in the plaintiff's cell block] could be the basis of a viable conditions of confinement claim"); *Hunt v. Levenhagen*, 1:14-CV-221 JD, 2014 WL 4261238, at **1-2 (N.D. Ind. Aug. 29, 2014) (finding that plaintiff's exposure to mold on the ceiling of his cell for one month "satisfie[d] the objective prong of the inquiry"); *Maxie v. Levenhagen*, No. 3:13-CV-1280 PS, 2014 WL 3828292, at **1-2 (N.D. Ind. Aug. 4, 2014) (finding that plaintiff's exposure to "excessive amounts" of mold and mildew satisfied objective element); *Van Patten v. Allen Cty. Jail*, No. 1:11-CV-73 PS, 2011 WL 48229106, at **1-2 (N.D. Ind. Oct. 11, 2011) (finding that plaintiff's allegation that "the walls, railings, and showers in his cell block were 'covered with mold'" was actionable under the Fourteenth Amendment).[15]

Other Circuits have also concluded that a prisoner's Eighth and/or Fourteenth Amendment rights can be violated through exposure to mold. For example, in a case before the Tenth Circuit, the plaintiff alleged that inadequate ventilation in both the individual cells and the public showers led to excessive mold and fungus growth. *Ramos*, 639 F.2d at 569. The court determined that these conditions did not "meet minimal shelter and sanitation standards" and had a "direct detrimental impact on the health and well being of the inmates." *Id.* at 570. And, in finding that the defendants had been deliberately indifferent to the plaintiff's exposure to these conditions, the Court emphasized that these deficiencies could have been corrected by routine maintenance and cleaning programs. *Id.* Accordingly, the Tenth Circuit affirmed the district court's finding that the plaintiff's exposure to mold was a violation of the Eighth Amendment. *Id.* Likewise, in *Braswell*, the Sixth Circuit reversed the district court's grant of summary judgment to corrections officials on a prisoner's mold exposure claim. 419 Fed.Appx. 622 (6th

---

[15] *See also Munson*, 2010 WL 2698279, at **1-2 ("exposure to mold" and "inadequate cleaning supplies for the cells"); *Westbrook*, 2013 WL 4505924, at *1 (exposure to mold-covered pipes and mold on the ceiling); *Dartz*, 2013 WL 5435806, at *1 (exposure to mold-covered pipes and mold on the ceiling).

Cir. 2011).  The court found that the plaintiff had suffered an actionable injury when he was left

in an "unsanitary cell" with mold growing in the toilet.  *Id.* at 627.  In so holding, the court

explained that such injuries were "more than de minimis"—that is, not petty or superficial—and

satisfied the PLRA's physical injury requirement.  *Id.*; *see also Smith v. Leonard*, 244 Fed.

Appx. 583 (5th Cir. 2007).[16]

*       *       *       *       *

In short, courts find that the existence of mold, mildew, or fungus creates unsanitary

conditions sufficiently serious  to satisfy the objective element of a conditions of confinement

claim in a wide range of circumstances, including when it is growing:  (1) in the inmate's cell on

the mattress, toilet, walls, ceiling, or other fixtures[17]; (2) throughout the common areas of the jail

or prison, including on the railings, pipes, bathrooms, showers, and infirmary[18]; or (3) around the

food storage areas.[19]  In addition, some courts also find that corrections officials' failure to

---

[16] District courts from other Circuits agree.  *See, e.g.*, *Benjamin*, 161 F. Supp. 2d at 159, 160-61, 164 (finding the objective element satisfied where poor ventilation "allow[ed] molds, mildews, and bacterial slimes to accumulate [and] fester in shower rooms and restrooms" and in the "infirmary"; finding subjective element satisfied where the conditions "are largely the continuations of deficiencies" that were subject to an earlier consent decree); *Reid*, 2014 WL 4185195, at **1-5, 15-17, 30-31 (denying motion to dismiss in light of allegations that:  (1) plaintiffs' had been exposed to mold throughout the prison, including through the air ducts, in the showers, and on the toilet's in their cells, for  at least six months; (2) prison officials had refused plaintiffs' request for cleaning supplies; and (3) plaintiffs' had made complaints and filed grievances with prison officials).

[17] *See, e.g.*, *Townsend*, 522 F.3d at 769 ("forced to sleep on a wet and moldy mattress"); *Budd*, 711 F.3d at 842 ("toilets covered in mold"); *Karim*, 2016 WL 910520, at *1 ("housing unit"); *Hoffman*, 2016 WL 879629, at *3 ("in the cell block"); *Hunt*, 2014 WL 4261238, at *1 ("on the walls"); *Meija*, 2009 WL 536001, at *1 ("cells are in a state of disrepair, including … exposure . . . to black mold"); *Ramos*, 639 F.2d at 569 ("in the cells"); *Braswell*, 419 Fed.Appx. at 624 ("bacteria growing in the [prisoner's] toilet"); *Reid*, 2014 WL 4185195, at **2, 4-5 ("cell and walls"; "air-ducts"; "toilets in cells").

[18] *See, e.g.¸ Burton*, 2015 WL 5175143, at *1 ("exposed to mold and mildew" throughout the various divisions of the prison and in the communal showers); *Cotton*, 2015 WL 1930548, at *1 ("Jail showers are contaminated with black mold"); *Van Patten*, 2011 WL 4829106 at *1 ("the walls, railings, and showers in his cell block"); *Westbrook*, 2013 WL 4505924, at *1 (mold in communal showers); *Dartz*, 2013 WL 5435806, at *1 (same); *Ramos*, 639 F.2d at 569 ("in the … shower area"); *Benjamin*, 161 F. Supp. at 161 ("fester[ing] in shower rooms and restrooms"); *Reid*, 2014 WL 418195, at **1, 4 ("all over the jail"; "showers").

[19] *See, e.g.*, *Karim*, 2016 WL 910520, at *1 ("inmates' meals were both transported on unsanitary carts and stored in rodent and mold infested areas"); *Ramos*, 639 F.2d at 571 ("Food preparation surfaces and cooking equipment are

provide an inmate with the necessary supplies to clean the mold can compound the seriousness of the unsanitary conditions.[20] And, while no court has found that the constitutionality of a prisoner's forced exposure to mold turns on the type of mold, some courts emphasize that exposure to a toxic substance known as *stachybotrys* or "black mold" poses particularly significant risks to the health of the prisoner.[21] Finally, a prisoner's exposure to mold can be an actionable constitutional violation in combination with other unsanitary conditions even if the mold by itself is not sufficiently serious to support a claim.[22]

As explained above, in assessing whether prison officials have been deliberately indifferent to a prisoner's exposure to mold, courts look for allegations demonstrating that the prison officials were aware or had notice of the existence of the unsanitary conditions yet failed to remedy them. And whether the prison official had knowledge of the risk is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. Moreover, a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

---

not properly cleaned and therefore provide areas for significant bacterial growth"; "walk-in coolers where food is stored have mold growing on them").

[20] *See, e.g.*, *Budd*, 711 F.3d at 843 ("[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, states a claim for relief"); *Karim*, 2016 WL 910520, at *1 ("not provided with adequate cleaning supplies and therefore was unable to clean his living space, leading to unsanitary living conditions"); *Meija*, 2009 WL 536001, at *1 ("Prisoners are not provided cleaning supplies to maintain their cells"); *Munson*, 2010 WL 2698279, at *1 ("inadequate cleaning supplies for the cells"); *Reid*, 2014 WL 4185195, at *2 ("refused [prisoner's] request for cleaning supplies 'to sanitize the cell and walls'").

[21] *See, e.g.*, *Hoffman*, 2016 WL 879629, at *3 ("toxic mold"); *Cotton*, 2015 WL 1930548, at *1 ("black mold"); *Hunt*, 2014 WL 4261238, at *2 (same); *Maxie*, 2014 WL 3828292, at *2 (same); *Meija*, 2009 WL 536001, at *1 (same); *Westbrook*, 2013 WL 4505924, at *1 (same); *Dartz*, 2013 WL 5435806, at *1 (same); *Reid*, 2014 WL 4185195, at **1-5 (same).

[22] *See e.g.*, *Karim*, 2016 WL 910520, at *2 ("Here, it is certainly plausible that the numerous allegedly inadequate conditions, including unsanitary cooking and living quarters, the constant presence of vermin, and failure to adequately provide basic cleaning items, taken all together, would amount to an unconstitutional condition of confinement. *Dixon*, 114 F.3d at 644 (providing that a condition that may not ordinarily violate the Eighth Amendment may nonetheless do so if in combination with other factors)").

Of relevance to plaintiffs' claims in this matter, the DOJ Report warned Sheriff Dart of the existence of unacceptable amounts of mold at the Cook County Jail: "The level of cleanliness at [Cook County Jail] is very poor. In the housing and medical areas we observed accumulations of dirt, trash, mold, and mildew that has been allowed to exist for long periods of time. … Shower areas frequently had dirt, mold, and mildew on walls and ceilings." DOJ Report at 78. The Seventh Circuit has concluded that such evidence should be admissible as substantive evidence of conditions at Cook County Jail. *Daniel*, 2016 WL 4254934, at *12. The subsequent Agreed Order with the DOJ required prison personnel to "implement written housekeeping and sanitation plans to ensure the proper routine cleaning of housing, shower, and medical areas … . Such policies should include oversight and supervision, including meaningful inspection processes and documentation, as well as establish routine cleaning requirements for toilets, showers, and housing units." Agreed Order at 46. The Seventh Circuit has concluded that such evidence, along with the DOJ Report and the Monitor's Reports, may be admissible to establish knowledge of the allegedly inadequate conditions at Cook County Jail. *Daniel*, 2016 WL 4254934, at *12.

### B.    Asbestos

For more than 45 years, airborne asbestos particles have been recognized as a dangerous toxin that, when inhaled, can cause a severe, irreversible, and often fatal condition known as asbestosis.[23] This condition is "a nonmalignant scarring of the lungs that causes extreme

---

[23] *See LaBounty v. Coughlin*, 137 F.3d 68, 74 n.5 (2d Cir. 1998) (citing 36 Fed. Reg. 5931 (1971) (designating asbestos as a "hazardous air pollutant" under the Clean Air Act, 42 U.S.C. § 7401 *et seq.*)); *see also Arnold v. Lane*, 1992 WL 159311, at **2-3 (N.D. Ill. Jul. 1, 1992) ("Exposure to asbestos has long been recognized as a health hazard in many different contexts"); *Diaz v. Edgar*, 831 F. Supp. 621, 624 (N.D. Ill. 1993) ("The capacity of asbestos fibers to cause serious injuries is undisputed"); *Castor v. United States*, 883 F. Supp. 344, 351 (S.D. Ind. 1995) ("[Asbestos is] a one-time miracle fabric turned cancer-causing nightmare") (quotation omitted); *Jelinek v. Roth*, 33 F.3d 56 (7th Cir. 1994) (unpublished) ("[A]sbestos can be dangerous to a person's health if present in large amounts or over an extended period of time"); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) ("It is uncontroverted that asbestos poses a serious risk to human health").

shortness of breath and often death; lung cancer; gastrointestinal cancer; and mesothelioma, a cancer of the lung lining or abdomen lining that develops as long as thirty years after the first exposure to asbestos and that, once developed, invariably and rapidly causes death."[24]  In light of these significant health risks, the U.S. Congress has warned that there is simply no minimal level of asbestos exposure that is considered safe.[25]  And the general public, for its own part, has long understood that exposure to asbestos can be deadly.[26]  As a result, numerous courts, including this Court, have found that prison authorities' deliberate indifference to a prisoner's exposure to asbestos violates the Eighth and/or Fourteenth Amendments.  *See, e.g.*, *Arnold v. Lane*, No. 91 C 5464, 1992 WL 159311, at *1 (N.D. Ill. Jul. 1, 1992); *Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995); *Powell v. Lennon*, 914 F.2d 1459 (11th Cir. 1990).

Regarding the objective prong of an asbestos based conditions claim, there are two key factors that the Seventh Circuit considers when assessing whether a prisoner's exposure poses a substantial risk of serious harm to the prisoner's current or future health.  First, the prisoner must have been exposed to "friable" asbestos,[27] which is asbestos that is exposed, readily crumbled,

---

[24] *Pack v. Artuz*, 348 F. Supp. 2d 63, 79 (S.D.N.Y. 2004) (citing *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 50 (2d Cir. 1988)); *see also Castor*, 883 F. Supp. at 351 ("Symptoms from asbestos-related diseases usually, but not always, occur some decades after exposure"); *LaBounty*, 137 F.3d at 74 n.5 ("[F]riable asbestos poses a significant health risk because airborne particles can become lodged in lungs and in the respiratory tract and over time can lead to asbestosis, mesothelioma and lung cancer").

[25] 20 U.S.C. §§ 3601(a)(3), 4011(a)(3); *see also Workplace Exposure to Asbestos:  Revise and Recommendations*, National Institute for Occupational Safety and Health, Department of Health and Human Services 81-103 (1980) ("Excessive cancer risks, however, have been demonstrated at all fiber concentrations studied to date.  Evaluation of all available human data provides no evidence for a threshold or for a 'safe' level of asbestos exposure"); *European Communities—Measure Affecting Asbestos-containing Products*, World Health Organization, WT/DS135/R. 2000.

[26] *See Wallis*, 70 F.3d at 1077 ("Asbestos is a well-known and highly publicized carcinogen"); *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 359 F.3d 226, 229 (3d Cir. 2004) ("Asbestos had, however, already become a well-known and important public health and safety issue in the United States prior to 1984"); *Castor*, 883 F. Supp. at 351 ("It is beyond cavil that asbestos causes or significantly contributes to an increase in mortality and an increase in serious irreversible, or incapacitating reversible, illness") (quoting *Metal Trades, Inc. v. United States*, 810 F. Supp. 689, 698 (D.S.C.1992); *Edwards & Caldwell LLC v. Gulf Ins. Co.*, No. Civ.A. 05-2231(JAP), 2005 WL 2090636, at *4 (D.N.J. Aug. 29, 2005) (taking judicial notice of the fact that asbestos is a hazardous substance).

[27] *See, e.g.*, *McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993).

loose, or airborne.[28]  Second, the prisoner must have been forced to live or work near the friable asbestos.[29]  The Seventh Circuit's decision in *McNeil v. Lane* is instructive.  In that case, the Court held that the plaintiff's bare allegation that there were asbestos-covered pipes in the prison failed to state a claim for relief.  16 F.3d 123, 125 (7th Cir. 1993).  As the Court explained, "asbestos abounds in many public buildings," and therefore exposure to "moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual."  *Id*.  However, the Court recognized that a person who lives or works near unreasonable concentrations of friable asbestos is exposed to significantly greater health risks that may rise to the level of a constitutional violation.  *Id.* ("Had, for example, McNeil been forced to stay in a dormitory where friable asbestos filled the air, we might agree that he states a claim under the Eighth Amendment") (citing *Powell v. Lennon* 914 F.2d 1459 (11th Cir. 1990)); *see also Contreras v. Hawk*, 77 F.3d 484, at *2 n.6 (7th Cir. 1996) (unpublished) (same); *Simmons v. DeBruyn*, 134 F.3d 374, at *3 (7th Cir. 1998) (unpublished) (same).

Accordingly, district courts in the Seventh Circuit, including this Court, have found that prisoners that have been ordered to live or work in close proximity to friable asbestos can satisfy the objective element of a conditions of confinement claim.  For example, in *Arnold v. Lane*, the plaintiff alleged that he was exposed to friable asbestos that circulated through the air ducts within his assigned cell.  1992 WL 159311, at *2 (N.D. Ill. Jul. 1, 1992).  The Court determined that these allegations rose to the level of a constitutional violation because such an exposure to

---

[28] *Pack*, 348 F. Supp. 2d at 79 (defining "friable asbestos" as asbestos that is "exposed and readily crumbled" or "airborne"); *see also* 225 ILCS 207/15 (defining "friable asbestos" as asbestos that "when dry, may be crumbled, pulverized, or reduced to powder by hand pressure"); 40 C.F.R. § 61.141 (defining friable asbestos as material that hand pressure can crumble, pulverize, or reduce to powder when dry).

[29] *See, e.g.*, *McNeil*, 16 F.3d at 125.

friable asbestos posed a substantial risk of serious harm to the plaintiff's health. *Id.* at **2-3; *see also Holman v. Thompson*, No. 90 C 457, 1992 WL 142349, at *2 (N.D. Ill. Jun. 18, 1992) (concluding that prisoner's exposure to asbestos "blowing around" the prison's tunnels and cells posed a substantial risk of serious harm); *Holland v. Lane*, No. 92 C 6871, 1995 WL 398891, at **4-5 (N.D. Ill. Jul. 3, 1995) (same); *Diaz v. Edgar*, 831 F. Supp. 621, 624 (N.D. Ill. 1993) (determining that prisoner's exposure to friable asbestos at his or her assigned work station can form the basis of a successful conditions of confinement claim); *Maxie*, 2014 WL 3828292, at *1 (N.D. Ind. Aug. 4, 2014) (same).

The *Arnold* Court also found that the plaintiff's allegations satisfied the subjective element of a conditions of confinement claim. 1992 WL 159311, at **2-3. In particular, the plaintiff informed prison officials about his exposure to friable asbestos through the filing of grievances and through his requests for transfer to an asbestos-free cell. *Id.* at *2. In addition, the Environmental Protection Agency (the "EPA") had prepared a laboratory sample analysis report that informed prison officials of the existence of friable asbestos throughout the prison. *Id.* Despite these warnings, the prison officials did "nothing to remove [the plaintiff] from this deadly exposure" to asbestos. *Id.* On these facts, as alleged, the Court found that the plaintiff had demonstrated that prison officials were both aware of the existence of the friable asbestos and deliberately indifferent to the plaintiff's exposure. *Id.* at *3; *see also Maxie*, 2014 WL 3828292, at *2 (plaintiff's allegation that he had informed the defendants of his exposure to asbestos was sufficient to establish deliberate indifference). As noted previously, these examples are illustrative only, and plaintiffs may satisfy the subjective prong of an asbestos-exposure claim through relying on the types of evidence that support any conditions of confinement claim.

Courts from others circuits have also found that a prisoner's exposure to asbestos can satisfy both elements of a conditions of confinement claim. In *Powell v. Lennon*, the Eleventh Circuit held that the plaintiff's allegation that prison officials knew that he was housed in a prison dormitory containing airborne asbestos for approximately five months was sufficient to state a claim for relief under the Eighth Amendment. 914 F.2d 1459, 1462-63 (11th Cir. 1990). Specifically, the plaintiff alleged that he had written letters to prison authorities and public officials complaining of his forced exposure to friable asbestos and requesting to be transferred to a dormitory that did not contain asbestos. *Id.* at 1461-62. In response to one of the plaintiff's letters, the EPA launched an investigation into the prison's handling of asbestos materials. *Id.* at 1462. That investigation found that prison authorities had committed a number of OSHA violations carrying fines totaling $50,000. *Id.* In light of these allegations, the court reasoned that even if the prison authorities were merely negligent in first exposing the plaintiff to friable asbestos, their refusal to move him from the contaminated dormitory after having been notified of the danger it posed constituted deliberate indifference to the plaintiff's serious medical needs. *Id.* at 1463 n.9 (citing *Estelle v. Gamble*, 429 U.S. 97, 97 (1976).) As noted above, the Seventh Circuit has repeatedly cited this case with approval and indicated that, under similar circumstances, a prisoner's exposure to asbestos may amount to a constitutional violation. *See, e.g., McNeil*, 16 F.3d at 125; *Contreras*, 77 F.3d 484, at *2 n.6; *Simmons*, 134 F.3d 374, at *3; *Arnold*, 1992 WL 159311, at *3; *Holman*, 1992 WL 142349, at *2; *Holland*, 1995 WL 398891, at *5.

Likewise, in a case before the Ninth Circuit, the plaintiff alleged that he was exposed to friable asbestos for approximately forty-five hours when he was forced to clean the attic of the prison without any protective gear. *Wallis*, 70 F.3d at 1075. The court readily concluded that

the alleged conditions "pose[d] a serious risk to human health" sufficient to satisfy the objective element of a conditions of confinement claim. *Id.* The plaintiff also presented evidence that the defendants were aware of the existence of the asbestos, including: (1) an asbestos assessment report that detailed the locations of exposed asbestos in the prison; (2) a state fire marshal's order to remove "hanging" material in the attic; and (3) the testimony of various prison officials indicating that they knew of or suspected the existence of exposed asbestos in the attic. *Id.* at 1077. In addition, the Court noted that state regulations made clear that "[t]here is no known safe level for human exposure to asbestos," and therefore "decayed or damaged[] … asbestos can pose a health risk to … inmates." *Id.* (citing Or. Rev. Stat. § 283.415 (1993)).[30] Under these circumstances, the Ninth Circuit was not swayed by the prison officials' "claim they did not know about the asbestos in the attics." *Id.* Rather, the court concluded that the defendants' failure "to inspect the attics prior to sending work crews into them for forty-five hours— unprotected" constituted deliberate indifference to a substantial risk of serious harm to the plaintiff's health. *Id.*

Similarly, the Second Circuit, in *LaBounty v. Coughlin*, vacated the district court's denial of the defendants' motion for summary judgment on the plaintiff's asbestos exposure claim. 137 F.3d 68 (2d Cir. 1988). In that case, the plaintiff alleged that he was exposed to friable asbestos in his work area and in many common areas around the prison. *Id.* at 73. While the defendants acknowledged that the pipes in the prison were lined with asbestos, and that occasional damage to the pipes caused some of this asbestos to be exposed, the defendants argued that any exposure was insignificant because any damage to the pipes was quickly repaired. *Id.* Separately, the

---

[30] The Illinois state legislature has also enacted legislation that makes clear that "[e]xposure to asbestos fibers and particles in the air over a long period of time has been linked by reputable medical and scientific authorities to a significant increase in the incidence of disease, such as asbestosis, bronchogenic carcinoma, mesothelioma, and other malignancies." *See also* 225 ILCS 207/5(2).

plaintiff alleged that he "complained about the presence of asbestos" to various prison officials, including the defendants. *Id.* In response, the defendants denied having any record of these complaints, but acknowledged that the plaintiff may have complained orally, as alleged, to prison officials. *Id.* The Second Circuit found that these allegations raised genuine issues of material fact concerning: (1) "whether [the plaintiff] was exposed to friable asbestos; and (2) "whether the defendants had notice [of the asbestos exposure] and therefore acted with deliberate indifference" in failing to move the plaintiff to an asbestos-free environment. *Id.*

The Fourth, Sixth, and Tenth Circuits have also found that prison officials' deliberate indifference to a prisoner's exposure to friable asbestos in his or her cell, assigned work area, or the common areas of the prison violates the prisoner's constitutional rights. *See, e.g.*, *Smith v. United States*, 561 F.3d 1090, 1094, 1105-06 (10th Cir. 2009) (holding that plaintiff had satisfied both the objective and subjective elements of a conditions of confinement claim, based on the following allegations: (1) the prisoner was exposed to friable asbestos while performing repairs in a broom closet over the course of two days; and (2) prison officials were aware of the existence of the asbestos in the closet because of a third-party consultant's survey); *Patton v. Bechtler*, 9 F.3d 109, at *3 (6th Cir. 1993) (unpublished) (vacating district court's dismissal of asbestos conditions of confinement because "if the defendants did compel [the plaintiff] to perform unprotected removal of asbestos with full knowledge of the danger of asbestos, their actions could constitute deliberate indifference to [the plaintiff's] well being in violation of the Eighth Amendment"); *Anderson v. Woods*, 19 F.3d 18, at *1 (6th Cir. 1994) (unpublished) (ruling that plaintiff's assignment to a work station with ceiling tiles containing asbestos fibers "arguably fit[s] within the protection afforded by the Eighth Amendment"); *Rice v. North Carolina Dep't. of Corr.*, 873 F.2d 1440, at *1 (4th Cir. 1989) (unpublished) (finding that

plaintiff's exposure to significant levels of falling asbestos in his living area, in the hallways, and in the kitchen "might pose a potentially serious problem"); *Holley v. Robinson*, 911 F.2d 722, at *1 (4th Cir. 1990) (unpublished) (holding that plaintiff's forced inhalation of asbestos particles from pipe insulation can constitute cruel and unusual punishment).[31]

*　　*　　*　　*　　*

In sum, courts find that a prisoner's exposure to asbestos poses a substantial risk of serious harm when the prisoner is:  (1) exposed to *friable asbestos*; (2) living or working in *close proximity* to asbestos; (3) exposed to asbestos for *more than a de minimis period of time*; and (4) exposed to *unreasonable concentrations* of asbestos.  *First*, courts typically find that asbestos is "friable" when it is either airborne (for example, particles circulating through the prison's air ducts or blowing through the cells, tunnels, and common areas of the prison),[32] or loose (for example, fibrous or crumbling material lining the prison's pipes, ceiling tiles, and other fixtures).[33]  *Second*, courts conclude that a prisoner has been forced to stay in "close proximity" to asbestos when exposed to the toxin in his or her cell,[34] at his or her work station,[35] or in the

---

[31] *See also Pratt v. City of New York*, 929 F. Supp. 2d 314, 317, 319-20 (S.D.N.Y. 2013); *Jackson v. Goord*, 664 F. Supp. 2d 307, 310, 320-21 (S.D.N.Y. 2009); *Reid*, 2014 WL 4185195, at **13-18; *Goyner v. McDonald*, 874 F. Supp. 464, 466-67 (D. Mass. 1995); *Purser v. Donaldson*, No. CV605-033, 2006 WL 2542932, at **2-3 (S.D. Ga. Aug. 30, 2006).

[32] *See, e.g.*, *Arnold,* 1992 WL 159311, at *2 ("circulat[ing] through the air ducts"); *Holman*, 1992 WL 142349, at *2 ("blowing around"); *Powell*, 914 F.2d at 1462-63 ("asbestos in the air"); *Rice*, 873 F.2d 1440, at *1 ("falling asbestos").

[33] *See, e.g.*, *Dartz*, 2013 WL 5435806, at *1 ("asbestos-covered pipes"); *LaBounty*, 137 F.3d at 73 ("broken" and "lined the pipes"); *Anderson*, 19 F.3d 18, at *1 ("fibers contained in the ceiling"); *Holley*, 911 F.2d 722, at *1 ("particles … from pipe insulation"); *Holland*, 1995 WL 398891, at *1 ("materials … laying on a vent and a pipe").

[34] *See, e.g.*, *Arnold,* 1992 WL 159311, at *2; *Powell*, 914 F.2d at 1462-63; *Holley*, 911 F.2d 722, at *1; *Pratt*, 929 F. Supp. 2d at 317.

[35] *See, e.g.*, *Diaz*, 831 F. Supp. at 624; *Smith*, 561 F.3d at 1094, 1105-06; *Wallis*, 70 F.3d at 1075; *Anderson*, 19 F.3d 18, at *1; *Jackson*, 664 F. Supp. at 320.

common areas of the prison, including the tunnels or hallways, the kitchen, and the cafeteria.[36]
*Third*, courts have found that a prisoner's exposure to asbestos for as little as little as two days
can constitute an actionable period of time.[37] *Fourth*, courts have not generally defined what
constitutes an unreasonable concentration of asbestos. Moreover, as discussed above, a
prisoner's exposure to asbestos can be compounded by other inadequate conditions of
confinement, such that the prisoner may be able to obtain relief even if his or her exposure to
asbestos is not itself sufficiently serious to support constitutional violation.[38]

In addition, courts find that prison authorities are deliberately indifferent to a prisoner's
exposure to asbestos when they: (1) are aware of the existence of asbestos in the prison; (2)
know of the substantial risk of harm that it poses; and (3) take inadequate action to eliminate or
mitigate that risk. Importantly, prisoners need not establish these elements through direct
evidence; rather, deliberate indifference may be demonstrated "in the usual ways, including
inference from circumstantial evidence … [or] from the very fact that the risk was obvious."
*Farmer*, 511 U.S. at 842. In making this determination, courts have relied on prisoner
grievances, letters, and other communications informing prison officials about the existence of

---

[36] *See, e.g.*, *Holman*, 1992 WL 142349, at *2 (tunnels); *Holland*, 1995 WL 398891, at *4-5 (tunnels); *LaBounty*, 137 F.3d at 73 (common areas); *Rice*, 873 F.2d 1440, at *1 (hallways and kitchen); *Goyner*, 874 F. Supp. at 465 (eating areas).

[37] *Smith*, 561 F.3d at 1094 (two days); *Wallis*, 10 F.3d at 1075 (two weeks); *Pratt*, 929 F. Supp. 2d at 317-318 (six weeks); *Powell*, 914 F.2d at 1461-62 (five months); *Maxie*, 2014 WL 3828292, at *1 (nine months)

[38] *See, e.g.*, *Westbrook*, 2013 WL 4505924, at *1 ("Westbrook is being exposed to asbestos-covered pipes and mold; on the second floor, there are only two toilets for 100 inmates; on the third floor there are only three working toilets for 104 inmates—and the working toilets overflow; there is feces on the floor; water drips from the ceiling, and there is black mold; there is no ventilation in the bathrooms; there are spiders and bugs in Plaintiff's cell that bite him; and rats and mice destroy his property. *All of these issues, alone and in combination, are actionable Eighth Amendment claims*") (emphasis added); *Dartz*, 2013 WL 5435806, at *1 (same).

asbestos and the dangers that it poses.[39]  Courts have also relied on reports, surveys, and consent

agreements prepared by prison officials, government agencies, or third-parties that acknowledge

that there are unsafe concentrations of asbestos in the prison.[40]  And, finally, courts look to state

and federal regulations to assess whether a reasonable prison official should have been aware of

the hazardous nature of asbestos exposure.[41]  As noted above, these examples are illustrative

only and plaintiffs may establish deliberate indifference in the asbestos context through relying

on the types of evidence that support any conditions of confinement claim.

### C.      Plumbing and Leaks

It is "self-evident that access to adequate and functional plumbing is essential to a healthy

jail environment because of the importance of water for drinking, personal hygiene, laundry,

kitchen use, and housekeeping." *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 171 (S.D. N.Y.

2001).  *See also Dennis v. Thurman*, 959 F. Supp. 1253, 1261 (C.D. Cal. 1997) ("Water and

functioning plumbing are basic necessities of civilized life").  Along these lines, the World

Health Organization has called the "proper management of" human waste "the primary barrier to

prevent the spread of pathogens in the environment."  Richard Carr, "Chapter 5: Excreta-related

infections and the role of sanitation in the control of transmission," *Water Quality: Guidelines,*

*Standards, and Health*, World Health Organization (2001), at 89.  Likewise, the U.S. Center for

Disease Control and Prevention identifies four major types of "human disease-causing

---

[39] *Arnold*, 1992 WL 159311, at **2-3 (grievances and requests for transfer); *Maxie*, 2014 WL 3828292, at *2 (oral complaints); *Powell*, 914 F.2d at 1461-62 (letters and requests for transfer); *Wallis*, 70 F.3d at 1076 (grievances and requests for transfer); *LaBounty*, 137 F.3d at 73 (oral complaints).

[40] *Arnold*, 1992 WL 159311, at *3 (EPA laboratory sample analysis report); *Powell*, 914 F.2d at 1461-62 (EPA investigation); *Wallis*, 70 F.3d at 1076 (internal asbestos assessment report); *Smith*, 561 F.3d at 1094 (consultant survey).

[41] *Wallis*, 70 F.3d at 1077 (state regulation); *LaBounty*, 137 F.3d at 74 & n.5 (federal regulation); *Goyner*, 874 F, Supp. at 466 (state health codes).

organisms" or "pathogens" that reside in sewage, including bacteria, viruses, protozoa, and parasitic worms. "Guidance for Controlling Potential Risks to Workers Exposed to Class B Biosolids," Department of Health and Human Services (July 2002), http://www.cdc.gov/niosh/docs/2002-149/pdfs/2002-149.pdf. Specifically, sewage can contain *Escherichia coli*, *Salmonella, Shigella*, *Campylobacter*, *Cryptosporidium, Giardia*, Norwalk Virus, enteroviruses, and other hazardous pathogens. *Id.* Not surprisingly, then, "the association between poor hygiene, raw sewage, and infectious disease is well established." *Id.* Exposure endangers not only the person actually exposed, but can be spread to others even in cases where that person does not manifest symptoms. *Id.*

Recognizing the dangers posed by exposure to sewage, courts have long considered exposure to leaking plumbing a constitutional deprivation under the Eighth and/or Fourteenth Amendments. *See, e.g., LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted"). And "courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste." *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990). Further, courts have indicated that "[t]here is no requirement that an inmate suffer serious medical problems before the condition is actionable." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001); *see also id.* (noting that it is "obvious" that "exposure to the human waste of others carries a significant risk of contracting infectious diseases such as Hepatitis A, shigella, and others" at a point in the future); *Gates v. Cook*, 376 F.3d 323, 341 (5th Cir. 2004) (holding that an Eighth Amendment plaintiff did not have to prove that he was actually injured by exposure to sewage, only that such exposure posed a serious health risk).

The Seventh Circuit has described exposure to sewage as the kind of "objectively sufficiently serious risk . . . that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency[.]"  *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (internal quotation and citation omitted).  *See also Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 2001) (objective component satisfied where prisoner lived with "leaking and inadequate plumbing" and the "smell of human waste").  Likewise, district courts in the Seventh Circuit frequently conclude that exposure to sewage satisfies the objective element of a conditions of confinement claim.  *See, e.g., Buffington v. O'Leary*, 748 F. Supp. 633, 634-35 (N.D. Ill. 1990) (inmate contended that he was subjected to "rusted water," a scent from "bad-smelling pipes," and exposure to human waste that had backed up through the plumbing); *Riley-El v. Illinois*, No. 13 C 5768, 2014 WL 3396531, at *2 (N.D. Ill. Jul. 10, 2014) (plaintiff alleged that he drank water that smelled like sewage and rotten eggs and came out of the faucet brown in color, which caused him stomach pains and diarrhea); *White v. Briley*, No. 04 C 5112, 2008 WL 4425437, at *2 (N.D. Ill. Sept. 26, 2008) (toilet and sink did not work, and "sewage was leaking into the cell from a nearby pipe"); *Stewart v. Wexford Health Sources, Inc.*, No. 15-cv-1322-MJR, 2016 WL 37334, at *2 (S.D. Ill. Jan. 4, 2016) (broken toilet exposed inmate and his cellmate to their own waste and the odor of urine and feces); *Smith v. Walton*, 15-CV-453-MJR, 2015 WL 2407548, at *6 (S.D. Ill. May 19, 2015) ("Unsanitary conditions, in particular those involving exposure to human waste, are recognized as creating a serious health risk").

An illustrative case, *Walker v. Lakin*, shows that exposure need not be lengthy in duration nor have caused any known medical consequences in order for a claim to satisfy the objective prong of a conditions claim based on exposure to sewage.  15-CV-00395-MJR, 2015 WL

2105858 (S.D. Ill. May 4, 2015). There, the plaintiff alleged that he was exposed to human waste as a result of two sewer backups, one lasting for only twenty-four hours. *Id.* at *1-2. Though he did not allege medical consequences resulting from exposure, the court noted that "[t]he fact that Plaintiff did not allege that he suffered an actual physical injury from these repeated exposures to raw sewage" did not matter, as the "heightened risk of future injury from living in an infested jail cell is itself actionable." *Id.* at *2.

Plaintiffs alleging inadequate plumbing claims may satisfy the subjective prong in the usual manner, as described above. For convenience, some illustrative examples follow. In *Gabb v. Wexford Health Source, Inc.*, No. 16-cv-1415-NJR, 2016 WL 397891, at *4 (S.D. Ill. Feb. 2, 2016), the plaintiff alleged that he submitted a work order to the facility plumber, then notified the warden about the resulting unsanitary conditions, but the prison "delayed addressing the issues." *Id.* at *4. "Prison officials' failure to take adequate steps to prevent inmates' exposure to human waste can amount to deliberate indifference." *Id. See also Riley-El*, 2014 WL 3396531, at *4 (subjective component satisfied where plaintiff notified officials "by correspondence and grievances and . . . received no response"); *White*, 2008 WL 4425437, at *8 (deliberate indifference adequately plead where "facts support the inference that these defendants knew plaintiff was being held . . . in cells containing human waste"). Of course an overt act also satisfies the subjective component of a claim. *See, e.g.*, *Walker*, 2015 WL 2105858, at **2, 6-7.

Where such exposure is concerned, the Seventh Circuit does not stand alone in establishing a relatively low bar for satisfaction of a conditions of confinement claim. Short durations of exposure have been held to satisfy the objective component of such a claim in other courts, too. In *Despain v. Uphoff*, 264 F.3d 965, 972 (8th Cir. 2001), for example, flooding occurred at 11:30 p.m. on March 28, and was "ultimately cleaned on the morning of March 30."

During the thirty-six hour period in-between, the system was turned on once, at 5:30 p.m. on March 29, "so that prisoners could flush their toilets." *Id.* The plaintiff alleged that he was "exposed to the stench of sitting urine in his toilet." *Id.* Because "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment," the court concluded that the plaintiff had successfully satisfied the objective prong of a conditions of confinement claim, despite the short duration of exposure. *Id.* at 974. The plaintiff was also held to have sufficiently alleged that prison officials were deliberately indifferent to his circumstances, satisfying the subjective prong of a conditions of confinement claim. *Id.* at 977. This was so, the court held, because when asked by the plaintiff whether he could clean his own cell, a guard responded that cleaning had been forbidden by the associate warden. *Id.* at 973. *See also Williams v. Adams*, 935 F.2d 960, 961-62 (8th Cir. 1991) (reversing summary judgment where plaintiff alleged that during thirteen-day period "the toilet in the cell did not work, and that it continually ran over and leaked onto the cell floor[.]").

Just as an inmate does not need to allege lengthy exposure to sewage, other circuits are also agree with the Seventh Circuit that he does not need to allege that serious medical harm has resulted to support a claim. In *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), for example, inmates were exposed to waste due to what the court described as "ping-pong toilets" (toilets that caused other toilets in the unit to back up when they were flushed). The court explained that "[n]o one in civilized society should be forced to live under conditions that force exposure to another person's bodily wastes." *Id.* at 334. It then criticized the defendant's argument that "there is no evidence of any serious medical problem stemming from the ping-pong toilets." *Id.* at 341. As the court explained, an inmate merely has to "prove a substantial *risk* of serious

harm" to prevail.  *Id.* (emphasis added).  In reaching this decision, the court relied upon decisions

in other circuits "indicating that 'courts have been especially cautious about condoning

conditions involving exposure to human waste.'"  *Id.*  The court was also persuaded by expert

testimony that "exposure to the waste of other persons can certainly present health hazards."  *Id.*

Notably, although exposure to sewage is a significant concern of the courts, leaking of

clean water can also violate the constitution.  *See Westbrook v. Vienna Corr. Ctr.*, No. 13-cv-

00751-GPM, 2013 WL 4505924, at *1 (S.D. Ill. Aug. 23, 2013) ("actionable Eighth Amendment

claim[]" where "water drips from the ceiling"); *Dartz*, 2013 WL 5435806, at *1 (S.D. Ill. Sept.

30, 2013) (same).  Courts are particularly inclined to find that a conditions of confinement claim

has been adequately pled when leaks are evaluated cumulatively with other problems.  *See, e.g.,*

*Anderson v. Morriso*n, 2016 WL 4488002, at *1 (7th Cir. Aug. 26, 2016) (slippery stairs

supported an Eighth Amendment claim where, among other things, other unsanitary conditions

were present in the stairwell).  In *Ramos v. Lamm*, 639 F.2d 559, 569 (10th Cir.), the inmate

plaintiff alleged several unsanitary conditions, including that the cell house and auditorium roofs

leaked despite repair work.  The court considered the unsanitary conditions "as a whole,"

including the roof leakage, and concluded that the "the conditions in which inmates are confined

. . . are 'grossly inadequate and constitutionally impermissible.'"  *Id.* at 570.  *See also Carty v.*

*Farrelly*, 957 F. Supp. 727, 736 (D. V.I. 1997) (conditions that failed to meet constitutional

standards included leaking shower areas that, "in turn, cause[d] the inmates' cells to flood,

soaking mattresses and personal belongings").  Although leaks can support a Fourteenth

Amendment claim, "slippery surfaces and shower floors in prisons, without more, do not

constitute a hazardous condition of confinement."  *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir.

2014).

*     *     *     *     *

In sum, courts find that the objective prong of a conditions of confinement claim is satisfied when a prisoner alleges nearly any exposure to human waste. The plaintiff does not have to plead that the exposure was lengthy – exposures of less than a day have been found to pose a substantial risk of serious harm. Under certain circumstances, leaking water other than sewage can also support a successful conditions claims. Regarding injury, a prisoner exposed to raw sewage does not need to indicate a specific medical harm that has resulted. The danger, as well as the degrading nature, of close contact to sewage has meant that exposure alone has consistently been held to satisfy the objective component of a plumbing exposure claim. The subjective component of an inadequate plumbing claim is analyzed in an identical fashion to any other conditions claim, and plaintiffs may rely on a variety of evidence to establish that defendants knew of but disregarded the risk.

Notably, the Civil Rights Division of the DOJ warned Sheriff Dart in its Report that "[t]oilet areas were extremely unsanitary" at Cook County Jail. DOJ Report at 78. The DOJ Report also indicated that "[i]t was common to find that multiple, sinks, toilets, and showers were inoperable in a single tier." *Id.* at 74. The investigators also found electrical hazards in "shower in toilet areas where floors were wet, creating a severe shock hazard." *Id.* The subsequent Agreed Order with the DOJ required prison personnel to "implement written housekeeping and sanitation plans to ensure the proper routine cleaning of housing, shower, and medical areas … . Such policies should include oversight and supervision, including meaningful inspection processes and documentation, as well as establish routine cleaning requirements for toilets, showers, and housing units." Agreed Order at 46. The Agreed Order also required routine and emergency maintenance of plumbing, including "shower, toilet, and sink units." *Id.*

**D.      Pests**

"[I]nfestation of vermin such as rats, mice, birds, and cockroaches is inconsistent with the adequate sanitation required by the Eighth Amendment." *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1411 (N.D. Calif. 1984). More than just a symptom indicating unsanitary conditions, the presence of "pests" (mice, rats, insects, birds, etc.) brings with it risks to health. For instance, the United States Department of Labor ("DOL") has long considered the potential presence of pests to be a workplace safety issue. Indeed, the DOL Occupational Safety and Health Standards directly address the issue, requiring that "[e]very enclosed workplace shall be so constructed, equipped, and maintained, so far as reasonably practicable, as to prevent the entrance of harborage of rodents, insects, and other vermin. A continuing and effective extermination program shall be instituted where their presence is detected." 29 C.F.R. § 1910.141(a)(5). As just one example of the kind of health risks with which exposure has been connected, high rates of asthma have been linked to cockroaches and mice. Chew GL, Carlton EJ, Kass D, Hernandez M, Clarke B, Tiven J, et al. "Determinations of cockroach and mouse exposure and associations with asthma in families and elderly individuals living in New York City public housing." *Annals of Allergy, Asthma, & Immunology*. 2006 Oct.; 97(4):502-13. For these reasons, courts in the Seventh Circuit and elsewhere have often stated that exposure to pests in a jail or prison can violate the constitution.

*Thomas v. Illinois*, 697 F.3d 612 (7th Cir. 2012), illustrates the Seventh Circuit's approach to analyzing the objective prong of a conditions claimed based on allegations concerning pests. In *Thomas*, the court explained that the analysis depends on the interaction of several factors including "how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create . . . and how long the infestation continues." *Id.* at 614. The court explained that the "psychological harm from living in a small

cell infested with mice and cockroaches is pretty obvious." *Id.* at 615. Beyond that, of course, the court explained that "cockroaches can transmit bacteria that aggravate asthma and cause other disease." *Id.* The court also provided two examples of airborne maladies, Hantavirus Pulmonary Syndrome and Bubonic Plague, for the proposition that "rodents can kill you without biting you." *Id.* Under *Thomas*, "infestation . . . with such pests might be found to be a compensable hazard even if the prisoner plaintiff had been lucky and escaped disease[.]" *Id.* at 615-16. The same would hold true even if the prisoner plaintiff had "sufficient psychological fortitude (or ignorance) to avoid suffering mental distress" whether because he knew that he might become seriously ill as a consequence of the conditions in his cell "or from sheer disgust." *Id.*

District courts in the Seventh Circuit analyze conditions claims based on exposure to pests in accordance with the factors identified in *Thomas*. Thus, the severity of exposure, length of exposure, and resulting harm are balanced. In *Mitchell v. Foster*, for example, the plaintiff observed spider webs in his cell. No. 16-cv-097-MJR, 2016 WL 4194570, at *2 (S.D. Ill. Aug. 9, 2016). After informing prison officials, and having them fail to implement an extermination plan, the plaintiff was bitten by a brown recluse spider. *Id* at *3. He was treated by prison medical staff for the bite, and also alleged psychological harm. *Id.* The court found that the allegations satisfied the objective component of a claim. *Id* at *6. *See also, e.g.*, *Brown v. Duvall*, No. 15 CV 1672, 2016 WL 3125002, at *5 (N.D. Ill. Jun. 3, 2016) (objective prong satisfied where over a six-month period "[p]laintiff described seeing two to three cockroaches during the day and twenty to thirty most nights, and seeing mice a few times a week"); *Bray v. Lain*, No. 2:13-CV-129 PS, 2013 WL 3677382, at *1 (N.D. Ind. July 12, 2013) ("infestation of ants, gnats, and spiders which get into [plaintiff's] food and bite him while he is sleeping").

However, infrequent exposure to pests, over a long period, may not rise to the level of a constitutional deprivation if not accompanied by sufficient allegations of harm. In *Murithi v. Hardy*, No. 13 C 00599, 2016 WL 890695, at *8 (N.D. Ill. Mar. 9, 2016), for example, the plaintiff alleged that over the course of nearly four years, he saw "approximately ten to fifteen birds and mice," as well as "the occasional spider, ant, gnat, moth, fly, and mosquito." The court noted that "[a]n occasional insect and a dozen or so mice and birds over a four-year period do not a significant infestation make." *Id.* The court also found that the plaintiff did not sufficiently allege harm and, indeed, there was no evidence on the record that he had reported "to medical staff any emotional or anxiety problems." *Id.* It also noted that he was unable to link any specific physical harms to the pests, and had testified that he had never been bitten. *Id. See also Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (prisoner who was incarcerated in the same cell for six years and only saw "several" cockroaches did not state a claim even though he alleged that he was bitten by them on two occasions). That said, even where exposure to pests alone might not constitute a deprivation as alleged, courts have held that it may do so where it is combined with other unsanitary or otherwise inadequate conditions. *See Karim*, 2016 WL 910520, at *2 ("numerous allegedly inadequate conditions, including unsanitary cooking and living quarters, the constant presence of vermin, and failure to adequately provide basic cleaning items, taken all together, would amount to an unconstitutional condition of confinement").

Regarding the subjective prong, as in other conditions claims, when a problem persists after prison officials are notified, courts may deem the subjective portion of the test satisfied even if corrections officials took some efforts to remedy the problem. In *Antonelli*, 81 F.3d 1422, for example, the Seventh Circuit concluded that the plaintiff had satisfied the subjective component of his claim notwithstanding the fact that corrections personnel had engaged a pest

control service to spay for pests twice over the course of sixteen months. Although that effort indicated "some concern for [the plaintiff's] right to be free from such conditions," it did not "necessarily show that the defendants were less than deliberately indifferent to this right." *Id.* Likewise, in *Gray*, the prison conducted a "trimonthly bird removal program" and monthly exterminator visits. 826 F.3d at 1009. Despite this attempt to remedy the condition complained of, the Seventh Circuit concluded that a jury could infer deliberate indifference because these efforts were allegedly ineffective. *Id.* As the Court explained, "[k]nowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference." *Id. See also White v. Monohan*, 326 Fed. Appx. 385 (7th Cir. 2009) (claim adequately pled where "the 'bugs, roaches, spiders, wasps, [and] bees' had bitten and stung [the plaintiff] so often as to leave multiple scars, wounds, and sores, causing him internal injuries" and prison officials had been informed but "refused to address his concerns"). And as in other conditions cases, whether the prison official had knowledge of the risk is a question of fact, "subject to demonstration in the usual ways, including inference from circumstantial evidence. … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Other circuits approach pest infestations in a similar way to the Seventh Circuit. In *Gaston v. Coughlin*, 249 F.3d 156 (2d Cir. 2001), for example, the plaintiff inmate alleged that "mice were constantly entering his cell." *Id.* at 165. He also alleged that the defendants had "actual knowledge" of the issue, having observed it while making their "daily rounds." *Id.* at 166. Although the district court considered these conditions "neither severe nor protracted enough" to violate the Eighth Amendment, the Second Circuit disagreed, concluding that both the objective and subjective prongs of the analysis were satisfied. *Id.* at 165. *See also Gates v.*

*Cook*, 376 F.3d 323, 340 (5th Cir. 2004) (conditions claim made out where "insects swarm in the inmates' food and beds and . . . the inmates often must choose between opening the widow for relief from the heat or closing the widow for protection from mosquitoes"); *Foulds v. Corley*, 833 F.2d 52, 54 (5th Cir. 1987) (inmate was "forced to sleep on the floor where rats crawled over him," which, "[i]f proven . . . would contravene the [E]ighth [A]mendment"); *Villanueva v. George*, 659 F.2d 851, 853 (8th Cir. 1981) (conditions of confinement claim adequately pled where inmate was bitten by a rat and lived in a cell "infested with insects" even though an exterminator sprayed monthly). As in the Seventh Circuit, short, but severe, infestations have been considered actionable under the Eighth and Fourteenth Amendments. In *Mena v. City of New York*, No. 13-cv-2430 (RJS), 2014 WL 4652570, at *1 (S.D.N.Y. Sept. 18, 2014), for example, the plaintiff adequately alleged a conditions of confinement claim where his cell conditions, including the fact that the cell was "infested with cockroaches and mice," prevented him from sleeping for just a few days. *See also Cano v. City of New York*, 44 F. Supp. 3d 324, 333 (E.D.N.Y. Sept. 12, 2014) (denying motion to dismiss where pretrial detainees alleged exposure to a "combination [of conditions including] . . . exposure to insects [and] rodents").

Courts outside of the Seventh Circuit have also been particularly sensitive to pest issues where other unsanitary conditions are also present. An illustrative case in the Third Circuit is *Allah v. Bartkowski*, 574 Fed. Appx. 135 (3d Cir. 2014). Due to unsanitary conditions, "the cell block smelled of urine and excrement, and was infested with pests." *Id*. at 138. The plaintiff also alleged that prison officials were "aware of the conditions . . . but failed to remedy them." *Id.* at 139. The court reversed the district court's dismissal of the plaintiff's complaint. *Id. See also Williams v. Griffin*, 952 F.2d 820, 824-25 (4th Cir. 1991) (where prison overcrowding was combined with other conditions, including prison being "infested with insects and vermin," an

Eighth Amendment violation was adequately pled); *Gillespie v. Crawford*, 833 F.2d 47, 50 (5th

Cir. 1987) (complaint adequately pled where "cell block was overcrowded, had inadequate

ventilation and lighting, and was dirt and insect infested"); *Hoptowit v. Spellman*, 753 F.2d 779,

783 (9th Cir. 1985) (holding that "vermin infestation, properly considered in the light of

unsanitary conditions such as standing water, flooded toilets and sinks, and dank air, is an

unnecessary and wanton infliction of pain proscribed by the Eighth Amendment").

*       *       *       *       *

In sum, when examining the objective prong of a conditions claim based on pest

exposure, courts balance the severity of exposure, length of exposure, and resulting harm. *See,

e.g., See Thomas*, 697 F.3d 612. Even after balancing these factors, a court may conclude that a

relatively trivial exposure to pests is actionable if the plaintiff is also subjected to other

inadequate conditions. *See, e.g., Hoptowit*, 753 F.2d at 783. Regarding the subjective prong, as

in other conditions claims, when a problem persists after prison officials are notified, courts may

deem the subjective portion of the test satisfied even if corrections officials took some efforts to

remedy the problem. *See, e.g., Antonelli*, 81 F.3d 1422. Thus, corrections officials may be

deliberately indifferent even if they undertake a consistent pest-control program if it is

ineffective. *See, e.g., id.*

Of relevance to this analysis, the DOJ Report noted "major pest problems observed

during our site visits involved mice, cockroaches, and drain flies." DOJ Report at 76. It also

explained that "[o]utbreaks of adult flies have been associated with bronchial asthma in

susceptible individuals." *Id.* Finally, the DOJ Report indicated noted that the defendant "has

only one person assigned to conduct pest control for the entire 96-acre facility," and that "one

person cannot perform adequate pest control for a facility of this size and nature." *Id.* The

subsequent Agreed Order required Cook County Jail personnel to "implement written

housekeeping and sanitation plans to ensure the proper routine cleaning of housing, shower, and medical areas … . Such policies should include oversight and supervision, including meaningful inspection processes and documentation, as well as establish routine cleaning requirements for toilets, showers, and housing units." Agreed Order at 46. The Agreed Order also required "adequate pest control throughout the housing units," and that "[s]ervices should provide for routine pest control spraying and additional spraying as needed." *Id.* at 47.

### E. Temperature

Because "[p]risoners are . . . entitled to 'the minimal civilized measures of life's necessities,' including adequate shelter," they also have the "right to protection from extreme cold" and heat. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (quoting *Farmer*, 511 U.S. at 833–34); *see also, e.g.*, *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir. 1991) ("[C]onstitutional rights don't come and go with the weather."); *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986) (holding that prisoners have a right to adequate ventilation and freedom from extreme heat and cold); *Bono v. Saxbe,* 620 F.2d 609 (7th Cir. 1980) (holding that insufficient heat is a factor frequently crucial to finding cruel and unusual punishment). Other circuits agree. *See, e.g., Campbell v. Clinton*, No. 1:07CV0021TCM, 2009 WL 5030787, at *6 (E.D. Mo. Dec. 14, 2009) ("[C]onstitutional rights don't come and go with the weather."); *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004) (same); *Gates v. Cook*, 376 F.3d 323, 339–40 (5th Cir. 2004) (affirming finding of unconstitutional heat, requiring provision of fans, ice water, and daily showers when heat index is over 90 degrees); *Gaston v. Coughlin*, 249 F.3d 156, 164 – 65 (2d Cir. 2001) (holding allegations of unrepaired broken windows throughout winter stated a constitutional claim). In addition to adequately heated and cooled air, inmates also are entitled to warm showers. *See, e.g.*, *Halmon v. Greer*, No. 14 C

3607, 2015 WL 2357632, at *2 (N.D. Ill. May 14, 2015) (noting that warm showers comprise "minimal civilized measure of life's necessities" although "an occasional cold shower" would not offend the constitution).

Regarding the objective prong of a conditions claim based on temperature, exposure to excessive cold or heat alone is sufficient and need not be alleged with other inadequate conditions of confinement to support a claim under the Eighth or Fourteenth Amendments. *Dixon*, 114 F.3d at 643–44 ("The caselaw does not, as defendants urge, stand for the proposition that cold alone falls below the minimum necessary for a successful conditions-of-confinement claim."); *see also Conley v. Thurmer*, No. 11–C–0308, 2011 WL 2746176, at *3 (E.D. Wis. Jul. 14, 2011) ("Heat is a 'single, identifiable human need'; thus, the lack of adequate heating may constitute a serious injury") (quoting *Wilson*, 501 U.S. at 299).

Whether a plaintiff's alleged exposure to excessive cold or heat objectively rises to the level of an constitutional violation is a fact-specific question. *See Dixon*, 114 F.3d at 643 ("[T]he question of whether the severity of the cold, in combination with the length of time which the inmate had to endure it, was sufficient to violate the Eighth Amendment is one which will often be peculiarly appropriate for resolution by the trier of facts."). Courts have held that "it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Id.* at 643; *see also Myers v. Indiana Dep't of Corr.*, No. 15-3196, 2016 WL 3619921, at *2 (7th Cir. Jul. 5, 2016) ("The length of time that the prison exposes an inmate to a harm may affect whether the exposure violates the Eighth Amendment."). Thus, "[a]n adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be

impermissible if it were only a short-term problem." *Gray*, 826 F.3d at 1005 (citing *Dixon*, 114 F.3d at 643).

There are no clear threshold temperatures or duration periods demarcating conditions that are constitutionally offensive from those that are not. Rather:

> [C]ourts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold.

*Id.* at 644; *see also Moore v. Monahan*, No. 06 C 6088, 2009 WL 310963, at *6 (N.D. Ill. Feb. 9, 2009).

Under this multi-factor approach, courts evaluate conditions-of-confinement claims involving extreme temperatures on a sliding scale, regarding both the temperature and the time period for which the plaintiff was exposed. In *Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994), for example, the plaintiff's most extreme exposure to cold lasted only as long as it took to conduct a strip search. *Id.* at 1031. The cold was brutal, though—"not much higher than the temperature outside . . . according to the [plaintiff], forty or fifty degrees below zero with the wind chill." *Id.* at 1035. The Court held that such exposure, albeit brief, was a sufficiently extreme deprivation of shelter to be of constitutional magnitude. *Id.* at 1036. Similarly, in *Henderson*, 940 F.2d at 1060, the plaintiffs' exposure to cold lasted less than a week but nevertheless was found sufficient to sustain an Eighth Amendment claim because the temperatures were below freezing. *See also Gillis v. Litscher*, 468 F.3d 488, 490 (7th Cir. 2006) (holding that conditions were sufficiently serious to meet objective prong where prisoner was forced to sleep naked in a cold cell and had to walk around 14 hours a day to keep warm); *Flores v. O'Donnell*, 36 Fed. Appx. 204, at *2 (7th Cir. Mar. 26, 2002) (holding that exposure to

extreme cold for 48 hours, 18 of which were without access to clothing, satisfied objective prong for Eighth Amendment violation)

Exposure to less extreme temperatures may also form the basis for a valid constitutional claim where such exposure is prolonged. *See Dixon*, 114 F.3d at 643 ("A condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time.") (citing *Antonelli*, 81 F.3d at 1431). In *Murphy v. Walker,* 51 F.3d 714, 720-21 (7th Cir. 1995), for example, mid-November temperatures were less severe than the temperatures involved in *Del Raine* or *Henderson*, but the condition persisted for a one and-a-half weeks. The Court held on a motion to dismiss that the plaintiff's confinement without adequate clothes and heat was sufficient to sustain a claim for inadequate heat and shelter. *Id.* at 721. Courts have also held, however, that brief exposure to low temperatures that do not amount to "anything more than the usual discomforts of winter," are not sufficient to meet the objective requirement. *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

Moving further along the continuum, the conditions the plaintiff in *Dixon* endured were "clearly not as severe as those in *Murphy*, *Del Raine*, or *Henderson*," but "[u]nlike those cases, … persisted for months, winter after winter." *Dixon*, 114 F.3d at 643. Specifically, the plaintiff in *Dixon* asserted that his cell was maintained at inadequate temperatures (approximately forty degrees Fahrenheit) during the winter months of his four-year sentence. *Id.* at 649. The Court concluded that such prolonged exposure without adequate clothing could rise to the level of a constitutional violation. *Id.* at 643–44. Similarly, in *Lewis v. Lane*, 816 F.2d 1165, 1166–71 (7th Cir. 1987), the Court held that a plaintiff's exposure over a two-month period that "at times fell to between 52 and 54 degrees" may violates minimal constitutional standards. Notably, a plaintiff need not assert a specific temperature or temperature range in order to sustain a claim.

*Gay v. Chandra*, 652 F. Supp. 2d 959, 969 (S.D. Ill. 2009) (noting that "[n]either party produced evidence showing what the temperature of the cell actually was," but holding that testimonial evidence that cells were cold were sufficient to allow plaintiff's claim to move forward).

In all conditions-of-confinement cases involving air temperature, a plaintiff's access to alternative means to keep warm or cool is relevant to—though importantly, not dispositive of—whether the plaintiff's conditions rise to the level of a constitutional violation. *Bentz v. Hardy*, 638 Fed. Appx. 535, 537 (7th Cir. Apr. 8, 2016) (Mem) ("[N]ot every effort to compensate for inadequate heat will suffice to evade liability . . . ."). It is well-settled that the provision of alternative means of warmth or cooling that are inadequate in light of the underlying condition will not be sufficient to evade liability. *See, e.g.*, *Diggs v. Godinez*, No. 94 C 7392, 1997 WL 308847, at *6 (N.D. Ill. Jun. 3, 1997) (denying defendant's motion for summary judgment where plaintiff was provided extra clothing, hat, gloves, and thermal underwear but still suffered from aches, chills, and stiff joints); *Henderson*, 940 F.2d at 1057-60 (concluding that the Eighth and/or Fourteenth Amendments might be violated where inmates were provided standard-issue prison clothing and bedclothes, but were not issued extra blankets, winter coats, or additional shirts during a four-day period when the temperature plummeted below zero and the prison heating system malfunctioned).

In *Dixon*, for example, the district court found that the heat provided to the plaintiff's cell at the Stateville Correctional Center was "clearly inadequate," and a problem of "long standing," but nevertheless concluded that the cold cell was not constitutionally inadequate because the blanket he was provided and his clothing, which included long underwear, a jacket, a cap, and gloves, "provided adequate protection from the cold." 114 F.3d at 642. On appeal, the defendants maintained that the plaintiff's clothing provisions rendered the cold not sufficiently

serious to amount to an Eighth Amendment violation, citing several Eighth Amendment cases in which successful litigants were not only exposed to cold but also lacked alternative means of keeping warm.  *Id.* at 643.  The Seventh Circuit rejected the defendants' argument, holding that "[t]he question . . . is not simply whether the inmate had some alternative means of warmth, but whether the alternative was adequate to combat the cold." *Id.* at 643 (citing  *Antonelli,* 81 F.3d at 1431).  Thus, the Court held that the determination of whether the plaintiff's constitutional rights had been violated would turn on "whether the prison's standard-issue clothing and bedding provided [the plaintiff] with the constitutionally necessary minimum protection against severe cold." *Id.* at 644.

Similarly, in *Del Raine*, where the plaintiff alleged exposure to sub-zero temperatures due to broken windows that had gone unrepaired despite numerous requests, the Seventh Circuit determined that "[t]he fact that the appellant was provided with one blanket does not in and of itself preclude the court's finding."  32 F.3d at 1036.  And, in a recent case where the record was better developed, the Seventh Circuit made clear that "not every effort to compensate for inadequate heat will suffice to evade liability under the Eighth Amendment."  *Bentz*, 638 Fed. Appx. at 537.  In *Bentz*, the Court considered the defendants' provision of clothing and a blanket to be irrelevant in light of the fact that the plaintiff was required to sleep in a bed soaked with rainwater.  *Id.* at 537 ("[W]e doubt that his clothing and blanket provided much relief from the cold.").  Other circuits have taken a similar approach.  *See Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (holding that objective prong was satisfied where the plaintiff was exposed to sub-zero temperatures even though he was provided with blankets).

While there are comparatively few cases in the Seventh Circuit involving excessive heat, courts have held that "a heat index over 90 degrees can pose an objectively serious threat to

health and safety if ameliorative steps are not taken, such as providing fans and ice water."

*Bentz v. Butler*, No. 14-cv-00996-NJR, 2014 WL 5293110, at *3 (S.D. Ill. Oct. 16, 2014) (citing

*Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004)).  As with cases involving extreme cold,

measures by prison officials to mitigate the otherwise inadequate conditions must be sufficient to

offset the high temperatures.  *See Blackmon v. Garza*, 484 Fed. Appx. 866, at *4 (5th Cir. 2012)

(finding that exposure to temperatures above 90 degrees, notwithstanding the use of industrial

fans and the provision of personal fans to prisoners, "met the threshold for objective seriousness

and resulted in the denial of the minimal civilized measure of life's necessities.") (citations and

internal quotations omitted).

However, the Eighth Amendment is not violated where prison officials provide adequate

alternative means to cool or warm an inmate, and there is no evidence suggesting temperature

conditions were anything other than slightly uncomfortable.  *See, e.g., Benson v. Godinez*, 919 F.

Supp. 285, 289 (N.D. Ill. 1996) (ruling for defendants where plaintiff admitted "he was issued

socks, shirts, pants, gloves, hats, jackets, and boots . . . [and] was also provided with two

blankets to combat the cold weather," and there was "no indication" that heating was

"inadequate").  Courts in other circuits have similarly held that brief encounters with

uncomfortable temperature conditions are insufficient to sustain an Eighth Amendment claim.

*See, e.g.*, *Johnson v. City of New York*, No. 09 Civ. 4685(PGG), 2011 WL 1044852, at *8

(S.D.N.Y. Mar. 18, 2011) (holding that plaintiff's forty-minute exposure to a cold air-

conditioned room, though unpleasant, did not amount to cruel and unusual punishment).

Frequency of exposure also factors into the analysis of whether exposure to cold water

objectively rises to the level of a constitutional violation.  Specifically, while "an occasional cold

shower due to plumbing problems is not a constitutional violation," warm showers are "part of

'the minimal civilized measure of life's necessities' to be provided to prisoners." *Halmon*, 2015 WL 2357632, at *2 (citing *Williams v. DeTella*, No. 95 C 6498, 1997 WL 603884, at *4 (N.D. Ill. Sept. 23, 1997)); *see also Gordon v. Sheahan*, No. 96 C 1784, 1997 WL 136699, at *7 (N.D. Ill. Mar. 24, 1997)).  In *Halmon*, for example, the court concluded that an eleven-month period of cold showers in allegedly contaminated water could violate the Constitution.  *Id.* at *2. Similarly, in *Tapia v. Sheahan*, No. 97 C 5737, 1998 WL 919709, at *5 (N.D. Ill. Dec. 30, 1998), the court concluded that consistently cold showers, coupled with a lack of heat, could violate the Constitution.

Plaintiffs alleging exposure to extreme temperature may satisfy the subjective prong in the usual manner, as described above.  For convenience, however, a few illustrative examples follow.  In *Collins v. Magana*, No. 14 C 5083, 2015 WL 7731840, at *4 (N.D. Ill. Dec. 1, 2015), the court held that the plaintiff's evidence that he submitted complaints and wrote letters complaining of his cold cell were sufficient to establish that the defendants acted with deliberate indifference.  *See also, e.g., Dixon*, 114 F.3d at 645 (finding triable issues concerning deliberate indifference where numerous other lawsuits alleging extreme cold at the same prison had been filed and where plaintiff complained to prison officials of conditions but received inadequate responses); *Anton v. Sheriff of DuPage Cty.*, 47 F. Supp. 2d 993, 1000 (N.D. Ill. 1999) (deliberate indifference adequately alleged where plaintiff's complaints regarding temperature put defendants on notice of conditions, but complaints were disregarded and conditions not remedied for hours).  As another example, a prison official's explicit acknowledgment of his awareness of the condition is also sufficient to satisfy the deliberate indifference prong.  *See Nicholas v. Edwards*, No. 06 C 255, 2006 WL 1519566, at *1 (N.D. Ill. May 30, 2006) (holding that guard telling plaintiff "the cold cell was part of his punishment" raised the reasonable

inference that prison warden was aware of condition); *but see Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865 (S.D. Ill. 2009) (finding no deliberate indifference where heating problem had been addressed by the time prisoner mailed complaints). Deliberate indifference cannot be found, however, where prison officials respond reasonably to the plaintiff's complaint. *Flores*, 36 Fed. Appx. 204, at *2 (finding no deliberate indifference where plaintiff did not dispute that prison guards offered him clothing three hours after his first complaint regarding low temperatures and that he rejected the offer).

* * * * *

To summarize, it is well-established that an inmate's exposure to extreme temperatures—life threatening or not—constitutes an Eighth and/or Fourteenth Amendment violation, notwithstanding the absence of other conditions of confinement claims. However the determination of whether a particular set of conditions objectively rise to the level of a constitutional deprivation is heavily fact-dependent, and the following factors will inform the court's inquiry: (1) the severity of the temperature; (2) the duration of the exposure; (3) whether the inmate had alternative means to protect himself from the exposure; (4) the adequacy of such alternatives; and (5) whether the inmate was required to endure other uncomfortable conditions in addition to extreme temperatures. And, as with all conditions-of-confinement cases, a plaintiff must demonstrate that prison official were deliberately indifferent to the prisoner's needs—that is, plaintiffs must demonstrate that prison officials had knowledge of an impending or ongoing risk of harm but did not adequately remedy it.

Notably, the DOJ reported to Sheriff Dart that "[a]ir quality measurements indicated excessive temperature and relative humidity" across dozens of cells in the Cook County Jail. DOJ Report at 75. The DOJ found that the "combination of high temperature and humidity, overcrowding, and lack of air movement create[d] an unhealthy environment that increases the

risk of disease transmission." *Id.* Based on these findings, the DOJ determined that the Cook County Jail "should implement, at a minimum, . . . remedial measures" that included "[e]nsur[ing] proper ventilation and airflow in all cells and housing units." *Id.* at 79, 94. Subsequently, the Agreed Order required the Cook County Jail to "ensure adequate ventilation throughout the Facility to ensure that inmates receive an adequate supply of air flow and reasonable levels of heating and cooling." Agreed Order at 46.

RESPECTFULLY SUBMITTED this 21st day of October, 2016.

By: s/ Daniel M. Greenfield

Daniel M. Greenfield
Karim Basaria
Benjamin R. Brunner
Jeff Carroll
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603
Tel.: (312) 853-7666
Fax: (312) 853-7036
Email: dgreenfield@sidley.com

*Recruited Amicus Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2016, I electronically filed this Brief of Recruited Amicus Counsel with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which will provide notice to all registered parties.

/s/<u>Daniel M. Greenfield</u>

Daniel M. Greenfield
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7666
Fax: (312) 853-7036
Email: dgreenfield@sidley.com

*Recruited Amicus Counsel*